## No. 26459

**Charles Wilson Wheeler v. District Court in and for the City and County of Denver and the State of Colorado, and the Honorable Gilbert A. Alexander, Judge of said Court**

(526 P.2d 658)

Decided September 23, 1974.

Myrick and Newton, P.C., Barrie G. Sullivan II, William E. Myrick, for petitioner.

James W. Creamer, Jr. & Associates, P.C., James W. Creamer, Jr., Mark A. Lambertson, for respondents.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an original proceeding brought under C.A.R. 21. Petitioner Wheeler seeks a writ of mandamus to require the respondent court to conduct a hearing concerning custody of two children domiciled with him in Colorado. Proceedings in the lower court were held under Colo. Sess. Laws 1973, ch. 163, 46-6-1 *et seq.,* at 556, the Uniform Child Custody Jurisdiction Act (hereinafter "the Act."). The court, instead of conducting a hearing, made summary disposition, ruling that it had no jurisdiction but to honor the Illinois court decree. Because this is a new act and a matter of first impression as well as of great public importance, we issued a rule to show cause why the court should not reinstate the petition and conduct a hearing thereon. The answer has been made and the issues framed. We make the rule absolute.

I.

Petitioner Wheeler and Sandra Kay Wheeler were divorced in Illinois in January, 1969. The wife received custody of their three children. The custody decree was changed in July

of 1969 and Wheeler was given custody. In early July, 1973 the Illinois court gave Wheeler permission to move his domicile and the children to Colorado, subject to visitation rights. On July 6, 1973, one day after Wheeler moved into this state, the Uniform Child Custody Jurisdiction Act was approved.

In August, 1973 the Illinois court changed the custody of one child to the mother; the child has since been returned voluntarily to her. In November, 1973, the Illinois court in an ex parte proceeding again modified the custody decree, ordering return of the other two children to their mother in Illinois. She filed an action against Wheeler in Denver district court in March, 1974 to enforce the Illinois decree. Wheeler answered and filed a cross-petition for affirmation of custody in himself. The lower court dismissed his petition, construing section 46-6-6 of the Act to mean the Illinois court had continuing jurisdiction, although noting this was a "classic example" of what the Act is designed to prevent.

## II.

The Uniform Child Custody Jurisidiction Act evolved from the growing public concern that thousands of children are shifted from state to state while their parents battle over custody. The harm to these children is enormous. They have little chance to develop a sense of belonging or close personal attachments, so essential in the formative years. The underlying policy of the entire Act is to eliminate jurisdictional fishing with children as bait. To give the Act any teeth, this policy must be uppermost when construing the statute.

The Illinois modification of its custody decree, stripping Wheeler of custody of his children, took place after the Uniform Child Custody Jurisdiction Act became law. Wheeler, a Colorado domiciliary, is governed by that Act. His motion for affirmation of custody in himself alleges the Illinois court lacked jurisdiction to modify. He is essentially asking the trial court to go beyond the face of the decree and make a judgment on which state has the more significant contacts to determine custody.

### III.

■ The trial court construed section 46-6-6 as a bar to its authority. That section concerns *simultaneous* proceedings in other states. It provides that a state where the children may be (such as Colorado) nevertheless has no jurisdiction, when a proceeding concerning custody of the children is *pending* in another state at the time of filing the petition.

In our view, section 46-6-6 does not apply. There was no proceeding pending in Illinois. Once a custody decree has been rendered in one state, jurisdiction is determined by other sections under the Act. *See Handbook of the National Conference of Commissioners on Uniform State Laws* 204 (1968) (hereinafter *"Handbook"*).

### IV.

We find section 46-6-3 to be significant. It contains two major jurisdictional tests which the trial court should have applied.

Section 46-6-3(1)(a) and (b) allows modification of a prior foreign child custody decree when this state is the home state of the child at the time of commencement of the proceeding. That test has been met.

■ Section 46-6-3(1)(a) and (c) provides an alternate jurisdictional basis. The Colorado court in the situation presented here may modify when it is *in the best interest of the children* to do so. Their best interest is served when the forum has a significant connection and optimum access to relevant evidence about them. This, more than any other provision of the Act requires interpretation in the spirit of the legislative policy. See *Handbook* at 201.

Colorado has been Wheeler's domicile since he moved here in July, 1973. He is steadily employed. The children have been under his care for almost five years. Their domicile moved with him. They have attended Colorado schools. Surely this state has both a significant connection and enough information to assume jurisdiction in this case.

■ The mother has contended that there are other sections of the Act under which it is mandated that

jurisdiction is in and continues to be in the court in Illinois. We think otherwise. The children being here and having established their domicile here under a court order from Illinois permitting the same, the Colorado court has jurisdiction.

V.

We are not saying that the outcome in this case will necessarily be different. What we are saying is that Colorado does not lack jurisdiction under the Uniform Child Custody Jurisdiction Act to hear this case. In making that determination the trial court should concern itself with the children's interest in keeping with the legislative policy of the Act.

Accordingly, we make the rule absolute.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES concur in the result.