Marguerite R. WINKELMAN, Applicant,

v.

The Honorable Scott C. MOSES, Circuit Court Judge, Respondent,

and

Kenneth E. Winkelman, Intervenor.

No. 12743.

Supreme Court of South Dakota.

Argued April 20, 1979.

Decided June 7, 1979.

Mark Falk of Black Hills Legal Services, Rapid City, for applicant.

John J. Delaney of Amundson & Fuller, Lead, for intervenor.

DUNN, Justice (on reassignment).

This original proceeding involves a dispute over child custody. Marguerite R. Winkelman and Kenneth E. Winkelman were divorced on August 17, 1973, in Lawrence County, South Dakota. By the terms of the divorce decree, Mrs. Winkelman was given custody of the parties' two minor children, Norman and Karen Winkelman. Shortly after the divorce, Mrs. Winkelman and her two children moved to California. Since that time, Mrs. Winkelman and Karen have consistently and continually remained residents of California. In October of 1974, Mr. Winkelman brought an action for modification of the divorce decree. He requested that the Circuit Court of the Eighth Judicial Circuit, Lawrence County, South Dakota, grant him legal custody of both minor children. The circuit court modified the divorce decree by entering an order granting Mr. Winkelman custody of Norman and denying Mr. Winkelman's request for custody of Karen. After modification of the divorce decree, Mrs. Winkelman and Karen returned to California. Mrs. Winkelman obtained employment in California as a school teacher. Karen was enrolled in school in California and attended regularly from the time that she and Mrs. Winkelman

moved to California until the summer of 1978. In August of 1978, Mr. Winkelman traveled to California and removed Karen from that state and returned her to South Dakota. Mr. Winkelman took this action without first notifying Mrs. Winkelman or school authorities and without any further order of the court. On September 6, 1978, Mr. Winkelman moved the circuit court in Lawrence County to issue an order temporarily restraining Mrs. Winkelman from removing Karen from the custody of Mr. Winkelman and required her to show cause why the amended divorce decree should not be further modified and amended to award full custody of Karen to Mr. Winkelman. The Honorable Scott C. Moses, a circuit judge of the Eighth Judicial Circuit, Lawrence County, granted Mr. Winkelman's motion.

On or about September 27, 1978, Mrs. Winkelman filed a motion for dismissal of the action for modification of the divorce decree on the basis of lack of subject matter jurisdiction under the South Dakota Uniform Child Custody Jurisdiction Act embodied in SDCL 26–5. In December of 1978, a hearing was held on the motion to dismiss. The Honorable Scott C. Moses entered findings of fact, conclusions of law, and an order on February 9, 1979, denying Mrs. Winkelman's motion to dismiss. The basis for such denial was that the original divorce was granted in Lawrence County, the divorce decree was modified in Lawrence County, Karen Winkelman had attended school in South Dakota over five years ago, and Karen was currently in the state with Mr. Winkelman under the court's temporary restraining order.

On March 16, 1979, Mrs. Winkelman made application to this court for a writ of prohibition to restrain the circuit court in Lawrence County from exercising jurisdiction and from conducting any further proceedings in this custody matter. In her application for a writ of prohibition, Mrs. Winkelman contends that the circuit court in Lawrence County does not have jurisdiction to make a child custody determination

by modifying the initial divorce decree. Mrs. Winkelman argues that such jurisdiction is lacking as a result of the application of the South Dakota Uniform Child Custody Jurisdiction Act (the Act).[1] SDCL 26–5. In order to more fully understand the Act's application to and impact upon the circumstances present in this case, we must be cognizant of the underlying purposes of the Act. These purposes are enumerated in the Uniform Child Custody Jurisdiction Act, 9 U.L.A. 103–104, § 1 (the Model Act) as follows:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states;

---

1. The Act was enacted by the South Dakota Legislature in 1978 (S.D.Sess.L. ch. 190), and its provisions were not available to Mrs. Wink-elman in the child custody modification action brought by Mr. Winkelman in 1974.

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) make uniform the law of those states which enact it.

Accordingly, we will construe the Act to promote the general purposes as stated in the Model Act above.

[1] The Act establishes two major bases for jurisdiction which can be applied alternatively. See, Model Act § 3, Commissioners' Note, p. 107. The first major basis for jurisdiction is home state jurisdiction embodied in SDCL 26–5–6 (Model Act § 3(a)(1)) as follows:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if this state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

The applicable definition under the present circumstances provides that the home state is that state "in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months." SDCL 26–5–5(5). Further, periods of temporary absence of any of the persons involved are counted as part of the six-month period. SDCL 26–5–5(5). We deem abductions or other unilateral removals of children without notice and approval, such as the removal of Karen from the custody of Mrs. Winkelman by Mr. Winkelman, the noncustodial parent, to be of no effect upon the residency of the child or to be within the classification of a "temporary absence" to be counted as part of the six-month home state period. It would be completely contrary to the intent and purpose of the Act for a noncustodial parent to qualify for the six-month home state period by abduction.

California is the home state under the Act since Karen lived with her mother in California for a period of approximately five years immediately prior to the commencement of these proceedings. See, *Marriage of Settle*, 276 Or. 759, 556 P.2d 962 (1976); *Wheeler v. District Court In & For City & Co. of Denver*, 186 Colo. 218, 526 P.2d 658 (1974); *Clark v. Superior Ct. In And For County Of Mendocino*, 73 Cal.App.3d 298, 140 Cal.Rptr. 709 (1977); *Howard v. Gish*, 36 Md.App. 446, 373 A.2d 1280 (1977). In fact, the provisions of the Act clearly provide that six months after Mrs. Winkelman and Karen moved to California this state was divested of jurisdiction to make a child custody determination as the home state. See, *Bryant v. Bryant*, 545 S.W.2d 938 (Ky. 1977); *Turley v. Griffin*, 508 S.W.2d 764 (Ky.App.1974).

The second major basis for jurisdiction involves significant connection and availability of evidence embodied in SDCL 26–5–7 (Model Act § 3(a)(2)) as follows:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if it is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

It would appear that Karen and Mr. Winkelman do have a significant connection with this state in that the initial divorce decree and modification of that decree were entered by the circuit court in Lawrence County; that Karen, her brother Norman, and Mr. Winkelman all reside in Lawrence County; that Karen attended school in South Dakota prior to moving to California with Mrs. Winkelman; and that Karen currently attends school in South Dakota because of the temporary restraining order referred to above. Further, substantial evidence is probably available in this state concerning Karen's present or future care, protection, training, and personal relation-

ships. Therefore, the circuit court of Lawrence County, South Dakota, could meet the minimum requirements of jurisdiction under the Act to make the child custody determination by modification decree.[2] We find, however, that South Dakota is an inconvenient forum to make such a custody modification determination under the circumstances of this case and that the courts of the State of California would be a more appropriate forum. The circuit court in Lawrence County must therefore decline to exercise its jurisdiction. SDCL 26–5–22.

There are several factors to be taken into consideration in such a determination of convenience of forum. SDCL 26–5–23. In our determination that South Dakota is an inconvenient forum, we have considered the best interests of Karen. We have already concluded that California is Karen's home state. SDCL 26–5–23(1). Although there is a connection between South Dakota and Karen and Mr. Winkelman, it would appear that California has a *closer connection* with Karen and Mrs. Winkelman based upon the fact that Karen and Mrs. Winkelman resided in California for approximately five years prior to the commencement of this action.[3] SDCL 26–5–23(2). Additionally, on the basis of the fact that Karen moved out of South Dakota when she was seven years old and lived continuously in California with her mother for approximately five years, substantial evidence concerning Karen's present or future care, protection, training, and personal relationships is *more readily available* in California. See, *Wheeler v. District Court In & For City & Co. of Denver*, 186 Colo. 218, 526 P.2d 658 (1974); *Schlumpf v. Superior Court Of Cty. Of Trinity*, 79 Cal.App.3d 892, 145 Cal.Rptr. 190 (1978); *Brooks v. Brooks*, 20 Or.App. 43, 530

P.2d 547 (1975). It would appear that the effects of Karen's five-year residence in California would be reflected by numerous witnesses in California regarding Karen's care, protection, training, and personal relationships, e. g., teachers, doctors, dentists, orthodontists, friends, and acquaintances. SDCL 26–5–23(3). It must be remembered that the child's interest is paramount to the mere interest or convenience of the feuding parties in a determination of child custody. "The interest of the child is best served when the forum has optimum access to relevant evidence about the child and family" which means that "[t]here must be maximum rather than minimum contact with the state." Model Act § 3, Commissioners' Note, p. 108. See *Marriage of Settle*, 276 Or. 759, 556 P.2d 962 (1976). We expressly find that California is the forum having such optimum access and maximum contact.

In our determination of inconvenient forum, we emphasize that the exercise of jurisdiction by the circuit court in Lawrence County would tend to contravene the underlying purposes of the Act as quoted above. See Model Act § 7(c)(5). We are primarily concerned about the deterrence of abductions and other unilateral removals of children undertaken to obtain custody awards. Model Act § 1(a)(5). The Act is specifically designed to discourage such abductions and other unilateral removals as is readily discernible from SDCL 26–5–6 and 26–5–7 quoted above. The Act's drafters state that SDCL 26–5–7 (Model Act § 3(a)(2)) "perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed" above. Model Act § 3, Commissioners' Note, p. 108. In fact, SDCL 26–5–10 [4] was drafted to guard gen-

**2.** We do not address Mr. Winkelman's contention that the circuit court in Lawrence County, South Dakota, also has jurisdiction under SDCL 26–5–8 (Model Act § 3(a)(3)) which provides for jurisdiction if the child has been abandoned or an emergency situation necessitates protection of the child because of mistreatment, abuse, or neglect.

**3.** The fact that a South Dakota court originally considered the custody case may be a factor favoring continued jurisdiction, but if the persons involved in the custody matter have

moved out of the state or "the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere." Model Act § 14, Commissioners' Note, p. 122. In the present case, contact with South Dakota is relatively slight when compared with the five-year contact established with California.

**4.** SDCL 26–5–10 (Model Act §§ 3(b), 3(c)) provides that

physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a

erally against too liberal an interpretation of SDCL 26–5–7. The Act also contains SDCL 26–5–20 (Model Act § 8(b)) which incorporates a "clean hands doctrine" under which a court will refuse to assume jurisdiction to modify an out-of-state custody decree when the petitioner has abducted the child or has engaged in some other objectionable scheme to gain or retain physical custody of the child in violation of the decree. Model Act § 8, Commissioners' Note, pp. 115–116. This further evidences the specific design of the Act to discourage child abduction by a noncustodial parent.

By allowing the circuit court of Lawrence County to exercise its jurisdiction, we would be putting a premium upon an improper removal of children from their state of original residence. *Marriage of Settle,* 276 Or. 759, 556 P.2d 962 (1976). We fully intend to discourage forum shopping and to protect the best interests of children. The potential harm to children such as Karen is enormous. Shifting these children from state to state while their parents battle over custody deprives children of a chance to develop a sense of belonging or close personal attachment so essential in the formative years. *Wheeler v. District Court In & For City & Co. of Denver,* 186 Colo. 218, 526 P.2d 658 (1974). Therefore, we hold that while the facts of this case are minimally sufficient to vest jurisdiction in South Dakota to make a child custody modification determination in accordance with the provisions of the Act, we decline to exercise jurisdiction in the best interests of the child and in deference to a more convenient and appropriate forum, i. e., California.

The application for a writ of prohibition is granted, and a writ of prohibition shall issue accordingly.

WOLLMAN, C. J., and MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

court of this state to make a child custody determination. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

HENDERSON, Justice (dissenting).

I respectfully dissent from the majority opinion.

This is an original proceeding brought by the mother, Marguerite R. Winkelman, against a Circuit Judge before the Supreme Court of this state. In circuit court there is pending the civil case of *Winkelman v. Winkelman,* where the mother seeks to restrain the circuit court in Lawrence County from exercising jurisdiction over any further proceedings in this custody matter. The Circuit Judge answered herein without benefit of counsel. On his own behalf the Circuit Judge made a full disclosure of his actions and the reasons for denying the mother's motion to dismiss the order to show cause to modify the decree of divorce.

I base my dissent, in part, on the following additional facts that the majority opinion did not address, which in my estimation bear significantly on the determination of this case. It is important to bear in mind that the father went to the State of California and took custody of his daughter not as a "child snatcher" but as a father heeding the cries of an anguished child who contacted him professing that her mother was generally abusing her. The father received a long distance call from Karen wherein Karen stated that she desired to come to South Dakota to live with her father and brother. During this conversation, the mother was allegedly screaming and yelling in the background.

The father and son both signed affidavits that Karen was subjected to continual screaming and yelling by the mother, and that Karen was highly upset and nervous due to unprovoked fits of anger directed at her by the mother. Norman Winkelman, age seventeen, stated that the mother was very emotionally unstable. The father swore under oath that Karen had lost her eyebrows due to a nervous condition, diagnosed by a doctor as allegedly caused by Karen's home environment. Karen has vol-

This provision places a chilling effect upon child abduction and limits the scope of SDCL 26–5–7 which is quoted supra.

unteered that she sorely missed her father and brother, with both of whom she has a close relationship. Karen maintains that her mother does not prepare meals regularly, refuses to keep the California home neat and clean, and does not provide her with proper medical attention. She maintains, as does the father, that the father's rights of visitation have been denied. She protests her general unhappiness and distress, and ultimately sought the help of her father in her plight. Norman Winkelman swore under oath that he left his mother's care in California because he could no longer bear living under such conditions.

The mother now desires to have our sister state of California decide the custody issue, maintaining that under the Uniform Child Custody Jurisdiction Act enacted in South Dakota in 1978, California is given jurisdiction under the circumstances of this case. The Circuit Judge denied the motion to dismiss, holding that South Dakota had continuing jurisdiction and South Dakota, not California, was the more convenient forum. All custody decisions involving these two minor children have been heard in Lawrence County, South Dakota. If South Dakota exercises jurisdiction in this case, any aggrieved party would have a plain, speedy, adequate remedy at law to appeal to this court.

The issues presented are: (1) Whether South Dakota has jurisdiction to determine change in custody of Karen Winkelman under the Uniform Child Custody Jurisdiction Act; and (2) if South Dakota does retain jurisdiction, must South Dakota decline exercising it pursuant to SDCL 26–5–22 and SDCL 26–5–23 on the basis that California is a more convenient forum. I would hold that South Dakota does have jurisdiction in this child custody dispute and that South Dakota, not California, is the more convenient forum.

I agree with the majority opinion only in its finding that South Dakota does have jurisdiction under SDCL 26 5 7. In addition, I would hold that South Dakota has jurisdiction pursuant to SDCL 26–5–8, which the majority opinion declined to address, mentioning it only in a footnote. SDCL 26–5 8 provides:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree *if the child is physically present in this state* and the child has been abandoned *or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse* or is otherwise neglected or dependent. (emphasis supplied)

This child's emergency situation, which necessitated her protection at the time that her father answered her cry, is the most critical aspect of this entire case. There is an abundance of evidence, albeit by affidavit, that indicates that there was an emergency situation created by the mother's abuse towards this child. It was for this reason that the child anguished and suffered and ultimately called the father for help. He responded in a humane manner and took what he considered to be a proper course of conduct for the best interest of his child. I am not so concerned with the mother's rights or the father's rights as I am concerned with the best interests of this young girl.

I part company with the majority opinion which states that: "The circuit court in Lawrence County must therefore decline to exercise its jurisdiction." The majority opinion cites SDCL 26–5–22 for its authority. The statute expresses:

A court which has jurisdiction under this chapter to make an initial or modification decree *may* decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. (emphasis supplied)

The Circuit Judge in this case found not only that South Dakota had jurisdiction but further found that South Dakota was not an inconvenient forum to make a custody determination. Furthermore, the Circuit Judge was not obliged as the majority opinion suggests to decline its jurisdiction.

SDCL 26–5–23 recites the various factors that the court shall consider, if it is in the interest of a child that another state assume jurisdiction. Then, oddly enough, the statute expresses that for this purpose, the court *may* take into account the following factors, including:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate.

In this regard, it must be remembered that these four factors are not exclusive. Furthermore, I disagree that if any one of these factors come into play the judge must decline jurisdiction. A judge has the discretion to decline jurisdiction if the circumstances so dictate that the best interest of the child could be better served in another jurisdiction. The best interest of the child must always be paramount. The majority agreed in theory with this position when it stated: "It must be remembered that the child's interest is paramount to the mere interest or convenience of the feuding parties in a determination of child custody." Yet, the majority opinion bases its decision that California is the more convenient forum because Karen has lived there for approximately five years. As a result, it is assumed that substantial evidence concerning Karen's present or future care is more readily available in California. I would like to point out that each and every day that this child was in the State of California, it was with the blessing of an order of a South Dakota court.

I maintain that this family, consisting of the father, brother and sister, has a closer connection with the State of South Dakota than the State of California. She is enrolled in South Dakota's schools and has South Dakota friends. She has an excellent relationship with her father and her brother. Her father has sought out medical attention and care for her. One of Karen's chief complaints is that her mother does not give her proper medical attention. There is also substantial evidence in this state concerning the child's present or future care, protection, training and personal relationships. The information concerning Karen Winkelman's best interests is far more prevalent in the State of South Dakota than it is in the State of California. In making its custody determination, a South Dakota court could procure any additional evidence located in California that it may require through the use of the procedural devices contained in SDCL 26–5–34 through SDCL 26–5–40.

The majority opinion does not concern itself with the humanities of the case. Karen, nearly thirteen years old, is of a sufficient age to form an intelligent preference. Karen's health, peace of mind, and living preference take a backseat to the court's theory of a convenient forum. The Uniform Child Custody Jurisdiction Act's purpose is to insure that the best interests of the child prevail; such interests should not be overridden in a jurisdictional battle. Karen Winkelman's best interests have been forsaken in legalism. It is for this reason that I dissent.