Sharon JOHNSON, Plaintiff
and Appellant,

v.

Darrell JOHNSON, Defendant
and Appellee.

No. 17425.

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1991.

Decided Nov. 20, 1991.

Ronald A. Wager of Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for plaintiff and appellant.

Vicki L. Tucek of Rice & Ewinger Law Offices, Aberdeen, for defendant and appellee.

SABERS, Justice.

## ACTION

Sharon Johnson (Mother) filed this discretionary appeal of a circuit court order denying her request that it decline to exercise jurisdiction over this child custody dispute.

## FACTS/PROCEDURAL HISTORY

Mother and Darrell Johnson (Father) were divorced by a South Dakota circuit court in Aberdeen in January 1987. Mother received custody of the couple's two youngest children, Terri (now 9 years) and Carrie (now 17 years). Father received custody of the two elder children, Kristi (now 22 years) and Tamara (now 21 years). Father continues to reside in Aberdeen. Mother, Terri and Carrie have lived in Minnesota for approximately two years.[1]

In August 1990, Father filed a motion with the South Dakota circuit court in Aberdeen, requesting a custody change for Carrie. Mother responded by requesting that the South Dakota circuit court decline jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA). The UCCJA is law in both South Dakota (SDCL 26–5A–1 through 26) and Minnesota (Minn.Stat. § 518A.01 through 518A.25). Both parties submitted substantial affidavits and memorandum of law in support of their respective positions. The South Dakota circuit court chose to exercise jurisdiction. This Court granted Mother's petition for discretionary appeal of the circuit court's jurisdictional ruling.

## DECISION

In child custody disputes, more than one state may have jurisdiction over the parties. *See generally,* 2 Rutkin, Family Law and Practice § 32.03[4][a] [hereinafter "Rutkin"]. This multiple jurisdiction resulted in forum shopping, abduction of children, and conflict between state courts over jurisdiction. *Id.* The UCCJA was designed to alleviate these problems by set-

---

1. There are no allegations that Mother improperly removed the children from South Dakota. She moved to Minnesota to pursue a job opportunity. Apparently, Father did not object to the relocation to Minnesota. Thus, there are no issues concerning child snatching.

ting standards and procedures to decide what state *should exercise jurisdiction.* UCCJA § 14, Comment. *See also* Rutkin, *supra,* at §§ 32.03[4][c] and [d]. To achieve these goals, the UCCJA provides, in pertinent part, that a state court has jurisdiction to make a child custody determination by initial or modification decree if it:

(1) is the home state of the child ...; or

(2) is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

SDCL 26–5A–3. *See also* 1 McCahey, Kaufman, Kraut, Gafner, Silverman and Zett, Child Custody & Visitation: Law and Practice. § 3.01[4][a] at p. 3–19 [hereinafter "McCahey"]. In short, the goal of the UCCJA is to avoid jurisdictional conflicts between states and assure that the state best suited to handle a particular controversy ultimately ends up exercising jurisdiction.[2]

This case is an example of how two states may simultaneously have jurisdiction over a child custody dispute. Minnesota has jurisdiction as Carrie's "home state." SDCL 26–5A–3(1). South Dakota has jurisdiction because Carrie and Father have a significant connection with South Dakota and there is substantial evidence concerning Carrie's present or future care, protection, training, and personal relationships available in South Dakota. SDCL 26–5A–3(2).

Section 14 of the UCCJA (SDCL 26–5A–14) provides:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which gave the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.

■ In other words, the South Dakota court which originally decided custody of the children has continuing jurisdiction over the matter. The UCCJA provides for continuing jurisdiction so parents cannot simply move to another state and have an unfavorable child custody ruling relitigated. 2 McCahey, *supra,* Chapter 5, at p. 5–1. When parents move to a new state, the new state must defer to the continuing jurisdiction of the state that originally decided custody, *unless the original state no longer has jurisdiction or has declined to assume jurisdiction. Id.* at § 5.03[2]; Rutkin, *supra,* at § 32.03[5].

In this case, Mother asked the South Dakota court to decline jurisdiction because it is an inconvenient forum. The "inconvenient forum" section of the UCCJA (SDCL 26–5A–7 and Minn.Stat. 518A.07), states, in pertinent part:

A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

\*   \*   \*   \*   \*   \*

In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, including:

---

**2.** This Court previously noted:

It must be remembered that the child's interest is paramount to the mere interest or convenience of the feuding parties in a determination of child custody. "The interest of the child is best served when the forum has optimum access to relevant evidence about the child and family" which means that "[t]here must be maximum rather than minimum contact with the state."
*Winkelman v. Moses,* 279 N.W.2d 897, 900 (S.D.1979) *quoting* Model Act § 3, Commissioners' Note, p. 108.

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate.

SDCL 26–5A–7.

Thus, the trial court has discretion in deciding whether to decline to exercise jurisdiction under SDCL 26–5A–7. *See, e.g., Breneman v. Breneman,* 284 N.W.2d 804, 92 Mich.App. 336 (1979); *Dennis v. Dennis,* 387 N.W.2d 234 (N.D.1986). *See also Winkelman,* 279 N.W.2d at 903 (Henderson, J., dissenting.)

■ The trial court reviewed the arguments of counsel and considered the nature of evidence available in South Dakota and Minnesota. Carrie grew up in South Dakota and evidence of her first fourteen years of life is available here. Minnesota is now her home state and evidence about the last two years of her life is available there. Carrie expressed her desire to move to South Dakota to live with her father. The South Dakota trial court exercised its discretion and chose to accept jurisdiction. Discretionary acts by their very nature involve choices. While perhaps not every member of this Court would have chosen to accept jurisdiction, the trial court's decision was not contrary to reason. There is no abuse of discretion if "a judicial mind, in view of the law and circumstances, could reasonably have reached that conclusion." *State v. Rose,* 324 N.W.2d 894, 896 (S.D.1982). Affirmed.

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., and HENDERSON, J., concur specially.

MILLER, Chief Justice (concurring specially).

I am in full agreement with the pronouncements and holding of the majority opinion. I do feel compelled, however, to express my frustration created by the belief that this court's opinion will have no meaningful, realistic value to the parties to this appeal. It solely has academic value to parties involved in similar litigation in the future.

The child who is the subject of this legal dispute was born on April 10, 1974. Thus, she will be eighteen years old within several weeks of the issuing of this opinion. At that time, as an emancipated adult, she, and not her parents or the judge, will decide whether she lives in Minnesota or South Dakota.

It must be remembered, too, that these proceedings were commenced by father because the girl wanted to live with him. Mother conceded that was her daughter's preference, but still persisted in this litigation.

In awarding custody of older children courts may consider the child's preference. SDCL 30–27–19. (In fact, in appointing a guardian for a child fourteen or over, the court is generally bound by the child's preference. SDCL 30–27–20.) Admittedly, the child's custody preference is permissive and not mandatory. *Isaak v. Isaak,* 278 N.W.2d 445 (S.D.1979); *Jasper v. Jasper,* 351 N.W.2d 114 (S.D.1984); *Shoop v. Shoop,* 460 N.W.2d 721 (S.D.1990). However, to be embroiled in custody litigation contra to the specific, stated wishes of a seventeen-year-old appears to me to be absurd.

HENDERSON, Justice (concurring specially).

A viper of rigidity, i.e., rigidity in the application of the Uniform Child Custody Jurisdiction Act, hatched in *Winkelman v. Moses,* 279 N.W.2d 897 (S.D.1979), now appears, through this decision, to die an ignominious death. In *Winkelman,* I dissented, deploring the decision of this Court, indicating at 902 thereof, the explicit language of SDCL 26–5–22; most specifically,

this writer called attention to the word "may" in said statute—which goes on to say "... may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." I emphasized strongly the word "may."

Essentially, I sang the song of placing discretion in the trial courts of this state. In my dissent, I noted that "The majority opinion does not concern itself with the humanities of the case." I mentioned that Karen (Winkelman) was of a sufficient age to form an intelligent preference. Chief Justice Miller did not serve on the *Winkelman* court. Mr. Chief Justice strongly alludes to the preference of this 17 year old girl. Karen Winkelman was only 13 years of age, when she expressed her preference. At 903 *Winkelman*, I pointed out that the best interests of the child should prevail and that Karen Winkelman's "best interests have been forsaken in legalism." Again, here, I would not have the best interests of Carrie Johnson subverted by "legalism."

In attempting to arrive at a good analysis, in futuro, in other cases, for the benefit of the best interests of the child, I commend to the reader an article dubbed INTERSTATE CUSTODY: INITIAL JURISDICTION AND CONTINUING JURISDICTION UNDER THE UCCJA, by Dr. Brigitte M. Bodenheimer, found at Family Law Quarterly, Volume XIV, Number 4, Winter, 1981, pp. 203–227. More particularly, reference is made by her to the "myth of a six month limit on continuing jurisdiction." Dr. Bodenheimer terms it an "extreme view and a misconception." I agree.

In *Winkelman*, we noted that South Dakota is divested of home state jurisdiction six months after a child leaves the state. What impact, then, does this decision have upon *Winkelman?* It is absolutely obvious that were we now deciding this case under *Winkelman's* pronouncement, that we would reverse this case. For, here, Carrie Johnson has been gone from South Dakota for two and a half years.

As noted in the majority opinion, under SDCL 26–5A–7, the trial court may choose to decline jurisdiction based on the inconvenient forum doctrine. I wholeheartedly applaud the adoption by this Court to adopt the discretionary test. And having reviewed the evidence (by affidavit), as did the trial court, conclude that there was no abuse of discretion.

Hereby, I endorse the comments of the Chief Justice. Decisions are, also, to make some common sense. I cannot fathom why this mother would embroil this girl in controversy to the Supreme Court of this state. Frankly, it appears that ego was altered over the best interests of Carrie Johnson.

In conclusion I wish to express: There is no doubt that Minnesota is Carrie's home state but under the Uniform Child Custody Jurisdiction Act, the fact that the child's home state has changed, does not eliminate South Dakota's jurisdiction herein.