Lee E. **FORTIN**, Plaintiff and Appellee,

v.

Stephanie L. **FORTIN**, Defendant and Appellant.

No. 17786.

Supreme Court of South Dakota.

Considered on Briefs Sept. 3, 1992.

Decided May 19, 1993.

R. Greg Bartron of Bartron, Wiles, Rylance and Holgerson, Watertown, for plaintiff and appellee.

Nancy L. Oviatt of Green, Schulz, Roby, Oviatt and Cummings, Watertown, for defendant and appellant.

SABERS, Justice.

Stephanie L. Fortin (Stephanie) appeals from an order granting Lee E. Fortin's (Lee) motion requesting an order restraining Stephanie from removing Trevor Lee Fortin (Trevor) from the State of South Dakota. We reverse.

### FACTS [1]

Stephanie and Lee married on July 30, 1982. Their son, Trevor, was born in 1986. The parties lived in Watertown, where Stephanie, age 34, managed Maurice's, a clothing store, and earned $1075 net per month. On occasion, after working during the evening, Stephanie would go to a bar prior to going home while Lee baby-sat Trevor. Lee, age 37, worked as an assembler for Telelect, Inc., earning $1505 per month. He is a Watertown native whose family lives in the area.

During the summer of 1990 the parties were having marital difficulties. Stephanie was facing the prospect of a new Maurice's building being constructed that fall. Because she found the situation depressing, she consulted her physician who prescribed the lowest dosage of Prozac. She took it for six weeks and then quit taking it. She has not used it since that time.

In February 1991, the parties separated. They agreed that Stephanie would have custody of five year old Trevor. She and Trevor moved out of the marital home. Lee exercised visitation rights with Trevor every other weekend and at other times during the week when Stephanie worked evenings.

Lee and Stephanie were divorced on May 9, 1991. The judgment and decree of divorce incorporated Lee and Stephanie's property and marital settlement agreement. The parties agreed that Stephanie would have custody of Trevor subject to Lee's rights of unspecified reasonable visitation. Lee agreed to pay $261.90 per month as child support. Following the divorce, Lee's visitation with Trevor followed the schedule developed during the separation period.

During Labor Day weekend, 1991, Stephanie told Lee that she was engaged to Robert Mack (Robert). She had met Robert during mall remodeling and had known him for a year. Robert is a 1974 graduate of the University of Southwestern Louisiana with a bachelor of architecture degree. Since 1974, he worked for three engineering/architectural firms and owned his own business for three years. He now is a superintendent for Total Tenant Construction in the Cleveland suburb of Mentor. He has been married twice before and has three children ages 9, 17, and 20.

Stephanie voluntarily resigned her job at Maurice's effective October 4, 1991. She planned to move to Mayfield Heights, Ohio on October 15 and marry Robert. She and Trevor would live in a three bedroom home that Robert had rented; Robert would join them in the home following the marriage. To help Trevor adjust, Stephanie did not plan to work until after Trevor was settled in the first grade in the fall of 1992. Robert supported this decision and had sufficient income to support the family.

At the time of the divorce, Lee was aware that Stephanie, for career advancement purposes, might have to move to a larger volume store within the Maurice's chain, probably in Sioux Falls or Rapid City. At the time of the divorce he and Stephanie had not contemplated the possibility of a more distant move. Therefore, he sought a restraining order pursuant to SDCL 25-5-13. He did not seek custody of Trevor.

Lee expressed several concerns over Stephanie moving Trevor to Ohio with her.

---

1. Lee's brief characterizes Stephanie as a mentally ill alcoholic who carried on an adulterous affair with an itinerant construction worker. Lee has not stated the facts either fairly or with the candor this Court requires. SDCL 15-26A-60, 15-26A-61.

He felt that the move would be traumatic for Trevor because he was born and raised in Watertown and had family there. During the marriage little time was spent with Lee's family. Since the divorce, however, Lee and Trevor had more contact with them. He was concerned that Mayfield Heights, a Cleveland, Ohio, suburb was in a large metropolitan area with racial, ethnic, traffic, school and criminal problems. He gave no examples of any problem, however. Lee also was concerned about the distance between Watertown and Mayfield Heights and its effect on his visitation with Trevor and his ability to have immediate involvement with Trevor's emotional, disciplinary, school, and medical needs. He did not, however, believe that Stephanie was anything other than a good mother who always allowed visitation and he did not question Robert's ability to parent or appropriately discipline.

Stephanie testified that Mayfield Heights is a suburb sixteen miles from Cleveland with a population of 19,000. It had been recommended to Robert by friends with children who live there. Trevor would be enrolled in a public school three-quarters of a mile from their home. She offered to provide Lee with liberal visitation during summers (eight weeks) together with two weeks during Christmas so that visitation with Lee and his relatives could be meaningful. She also offered to share the expense of sending Trevor to see his father. She felt that Robert and Trevor had developed a good, loving relationship.

The trial court found that while Stephanie may have had compelling reasons to move from South Dakota, there was "absolutely no evidence" that such a move was consistent with Trevor's best interests. In fact, such a move would disrupt continuity and stability, lessen the frequency of Lee's visitation, and lessen Lee's substantial influence and parental input on Trevor's rearing and upbringing. The court's conclusions of law were consistent with these findings. The court filed its order restraining Stephanie from removing Trevor from the State of South Dakota on November 4, 1991.

On December 13, 1991, Stephanie filed a motion for clarification of this order. Lee had taken the position that Stephanie was restricted from taking Trevor out of South Dakota for any purpose and any duration of time. By this time Stephanie had married Robert. She remained in Watertown with Trevor; Robert lived in Ohio. Stephanie was managing a retail floor for Cook's, Inc. in Watertown, and wanted to take Trevor with her to spend the holidays in Ohio with Robert, in Louisiana with Robert's relatives, or in Iowa with her parents.

On January 8, 1992 the trial court filed an order which said that its November 1991 order applied only to the removal of Trevor's residence from South Dakota. Lee and Stephanie only had to give each other reasonable notice of their intent to take Trevor out-of-state, their intended destinations and the duration of the visits.

Stephanie appealed from the November 1991 order as clarified by the January 8, 1992 order.

## ISSUE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO PERMIT THE CUSTODIAL PARENT TO CHANGE THE MINOR CHILD'S RESIDENCE FROM SOUTH DAKOTA TO OHIO?

"A parent entitled to the custody of a child has the *right* to change his residence, subject to the power of the circuit court to restrain a removal which would prejudice the rights or welfare of the child." SDCL 25-5-13. (emphasis supplied). This statute mandates that the trial court consider the best interests of the child prior to permitting the move. *Matter of Ehlen*, 303 N.W.2d 808 (S.D.1981). "The majority of cases dealing with removal of a child from the jurisdiction support the rule that if a parent who has custody of a child has good reason for living in another state, removal will be permitted, providing such a move is consistent with the best interests of the child." *Id.* at 810. This Court reviews a trial court order permitting or denying removal to determine whether the trial court

abused its discretion. *Ducheneaux v. Ducheneaux*, 427 N.W.2d 122 (S.D.1988).

In South Dakota there are two cases specifically dealing with a custodial parent's request to move with the children to a different jurisdiction. *Matter of Ehlen, supra; Ducheneaux, supra.* In *Ehlen, supra,* the custodial mother remarried and planned to move to Seattle, Washington, where she and her husband would be employed and would enroll the children in school as well as sports and cultural programs. This court affirmed the trial court's decision that the move was in the children's best interests. In *Ducheneaux, supra,* this court affirmed the trial court's decision denying the custodial parent's request to move the children to California. In that case, moving meant the loss of public health services, living on ADC benefits on arrival in California since the custodial mother had no definite employment arrangement in California, and the loss of the daily paternal visitation and influence that the children were accustomed to in South Dakota.

In this case, the trial court prohibited the custodial mother from moving her son with her to Ohio for the sole reason that the move would disrupt the noncustodial father's visitation with and influence over his son, of whom he never sought custody. This limited focus ignores several factors which in the context of a divorce and modern society, play a part in a child's best interest. First, divorce by its very nature creates different family units with different dynamics among the original family members. *D'Onofrio v. D'Onofrio,* 144 N.J.Super. 200, 365 A.2d 27 (1976). *See,* Edward Sivin, Note, *Residence Restrictions for Custodial Parents: Implications for the Right to Travel,* 12 Rutgers L.J. 341 (1981). Any divorce and any relocation will impact the noncustodial parent's role in a child's life. Second, society is mobile and opportunity and economic necessity often necessitate moves to distant places. *Lindley v. Lindley,* 401 N.W.2d 732 (S.D.1987). And, finally, the best interests of the children prevail over the noncustodial parent's privilege of visitation. *Id.*

The *D'Onofrio* case, *supra,* that this Court cited in *Matter of Ehlen, supra* provides thoughtful observations:

The children, after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together. The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children. It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered.

\*    \*    \*    \*    \*    \*

The court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available and where the advantages of the move are substantial. It is at least arguable, and the literature does not suggest otherwise, that the alternative of uninterrupted visits of a week or more in duration several times a year, where the father is in constant and exclusive parental contact with the children and has to plan and provide for them on a daily basis, may well serve the paternal relationship better than the typical weekly visit which involves little if any exercise of real paternal responsibility.

It is further clear that a noncustodial parent is perfectly free to remove himself from this jurisdiction despite the continued residency here of his children in order to seek opportunities for a better or different life style for himself. And if he does choose to do so, the custodial parent could hardly hope to restrain him from leaving this State on the ground that his removal will either deprive the children of their paternal relationship or depreciate its quality. The custodial parent, who bears the essential burden and

responsibility for the children, is clearly entitled to the same option to seek a better life for herself and the children, particularly where the exercise of that option appears to be truly advantageous to their interests and provided that the parental interest can continue to be accommodating, even if by a different visitation arrangement than theretofore.

*Id.,* 144 N.J.Super. at 206–208, 365 A.2d at 29–30.

In South Dakota, the custodial parent has the right to change his residence unless removal would prejudice the child's rights or welfare. SDCL 25–5–13. After a careful review of the evidence we are convinced that the trial court abused its discretion by restraining Stephanie from removing Trevor from South Dakota.

The record reflects that both parents are loving and concerned and have worked together, despite their divorce, for their son's well-being. Stephanie, however, has been Trevor's primary caregiver since his birth. Her desire to move to Ohio was motivated by an impending marriage [2] which offered her the financial security to be able to not work outside of the home for a year in order to make Trevor's transition smooth. She had no desire to frustrate or defeat Lee's influence over or visitation with his son. Since the divorce she made sure that Lee had very liberal visitation with his son and, if the move to Ohio was approved, she offered Lee eight weeks of summer visitation together with two weeks during the holiday season. In addition, she offered to share the cost of transporting Trevor to see his father. Telling also is the fact that Lee gave Stephanie sole custody of Trevor and never sought custody after he learned of the move, an indication that he lacks concern that a move would prejudice his son's welfare. Under these circumstances, the trial court abused its discretion by restraining Stephanie from removing Trevor from South Dakota.

The order appealed from is reversed. Stephanie has filed a motion and affidavit

in accordance with *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985), in the total amount of $2,933.55. Based on the *Malcolm v. Malcolm* factors, Stephanie's motion for attorney's fees and tax is granted in the amount of $1,500.00.

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., and HENDERSON, J., dissent.

MILLER, Chief Justice (dissenting).

The majority writer states: "After a careful review of the evidence we are convinced that the trial court abused its discretion by restraining Stephanie from removing Trevor from South Dakota." *Supra* at page 233. And yet, the majority writing totally fails to identify even one of the trial court's sixteen findings of fact which it believes to be clearly erroneous. In the absence of clearly erroneous findings, it is inappropriate to find that the trial court has abused its discretion. Therefore, I dissent.

The parties agree that a trial court must consider the best interests of the child in granting or denying his removal from South Dakota and they refer this court to *In re Ehlen,* 303 N.W.2d 808 (S.D.1981). Stephanie argues, and would have this court adopt, a presumption that removal of the child is in the child's best interests unless it is proven by the noncustodial parent that removal is not in the child's best interest. *See Auge v. Auge,* 334 N.W.2d 393, 397 (Minn.1983). Stephanie's cleverly written brief has apparently fooled, or at least confused, the majority writer, for in this state, it is not Lee's burden to show it is in Trevor's best interests to remain in South Dakota.

In *Ehlen,* we adopted the view of a majority of the states that "if a parent who has custody of a child has good reason for living in another state, removal will be permitted, providing such a move is consistent with the best interests of the child." *Id.* at 810. Clearly, under our settled law,

---

**2.** As indicated above, Stephanie and Robert did marry but she remained in Watertown with Trevor and found new employment because of the trial court's decision on removal. Robert lives in Ohio.

*the burden is on the custodial parent,* Stephanie, to show that a proposed move is "consistent with the best interests of the child." *

The trial court found in Finding of Fact XVI that "Stephanie may have compelling reasons to move from South Dakota, but there is absolutely no evidence that such a move is consistent with the best interests of Trevor and, in fact, such a move would disrupt the continuity, stability and good home environment which the law demands for children." As noted earlier, the majority writer has not determined this finding to be clearly erroneous. Further, a review of the record convinces me that, other than Stephanie's repeated assertions, there is no evidence to support Stephanie's assertion that this proposed move is in the best interests of Trevor. Finding XVI, and the others as well, are not clearly erroneous.

I also dissent from the majority writing which finds it "telling" that the party contesting a removal of a child by the custodial parent did not seek a change in custody, and goes on to see in this "an indication that he lacks concern that a move would prejudice his son's welfare." This language in effect tells a contesting noncustodial parent that he must seek a change in custody if he wishes to effectively contest removal by the custodial parent. Such a requirement unnecessarily complicates and aggravates an already emotional issue.

The trial court did not abuse its discretion and should be affirmed.

HENDERSON, Justice (dissenting).

Unfortunately, the majority opinion completely retries this case, substituting its judgment for a circuit court judge. The rule of deference is completely forsaken.

We are bound by the rule that the question is:

> [N]ot whether the [Justices] of this Court would have made an original like ruling, but rather whether we believe a judicial mind, in view of the law in the circumstances, could reasonably have reached that conclusion. *F.M. Slagle & Co. v. Bushnell,* 70 S.D. 250, 16 N.W.2d 914, 916 (1944).

*See Johnson v. Johnson,* 477 N.W.2d 603, 606 (S.D.1991). Here, the trial court conducted two days of testimony, weighed the evidence, and issued Findings of Fact and Conclusions of Law. Based upon the evidence before it, the circuit judge decided it was not in the best interests to have a permanent change of residence for Trevor.

Removal is permitted if a move is consistent with the best interests of the child. *Ducheneaux v. Ducheneaux,* 427 N.W.2d 122, 123 (S.D.1988) (citing *In re Ehlen,* 303 N.W.2d 808 (S.D.1981), the case upon which Chief Justice Miller relies in his dissent).

There was no testimony to corroborate Stephanie's singular evidence which was restricted to her self-serving statements. Furthermore, the circuit judge had evidence to establish that Stephanie had a long history of emotional instability and an alcohol drinking problem. At the time when Judge Bradshaw tried this case, Stephanie had a new marriage of less than six months to an itinerant construction worker with an unsettled work history. Obviously, the circuit court judge was concerned with providing a stable environment for this five year old boy.

When Judge Bradshaw tried this case, the proposed move was to Mayfield, Ohio, a suburb just outside the large metropolitan

* The *Ehlen* court was called upon to interpret SDCL 25–5–13, which stated then, as it does now, that "[a] parent entitled to the custody of a child has the right to change his residence, subject to the power of the circuit court to restrain a removal which would prejudice the rights or welfare of the child." This statute has never been interpreted to place the burden of proof on the non-custodial parent. Indeed, when a child is concerned, regardless of the context of the proceeding, the one seeking a change from the status quo has the burden to show the change is in the best interests of the child. *See e.g.* SDCL 26–11–4 (juvenile proceedings not conducted in adult court unless party seeking change justifies the transfer); SDCL ch. 26–8A–2 (children are best left with parents unless party seeking change justifies termination of parental rights); SDCL 25–7A–22 (child support payments not modified unless party seeking change justifies modification) and SDCL 25–4–45 (in non-stipulated custody agreements, custody of child not changed unless party seeking change justifies modification).

area of Cleveland. Justifiably so, the father was concerned with racial, ethnic, traffic, school and criminal problems. Father was extremely concerned with such a move causing an ill effect on this young boy. The circuit judge heard testimony that such a geographical distance affected Trevor's immediate emotional, disciplinary, school, and medical needs. Obviously, the circuit judge was influenced by such testimony. Both the credibility of the witnesses and weight to be accorded to their testimony is for the trial court to determine. *Mellema v. Mellema,* 407 N.W.2d 827, 831 (S.D. 1987); *Scott v. Wagner,* 274 N.W.2d 266 (S.D.1979). Judge Bradshaw entered these Findings of Fact which the majority opinion has not characterized as being clearly erroneous:

### V.

The parties have cooperated well in planning visitation and have maintained a good relationship as it relates to Trevor. Both parties have demonstrated cooperation and Lee has demonstrated more than the usual amount of care and concern for Trevor.

### XIII.

Trevor has resided his entire life in Watertown, South Dakota. He has had the benefit of the care, love and affection of both parents and the association of the majority of his relatives, including his grandparents, cousins and some little friends.

### XV.

The removal of Trevor from South Dakota would lessen the frequency of visitation by Lee and also lessen his influence upon the rearing and upbringing of Trevor and the parental input to which Trevor is accustomed.

### XVI.

*Stephanie may have compelling reasons to move from South Dakota, but there is absolutely no evidence that such a move is consistent with the best interests of Trevor,* and, in fact, such a move would disrupt the continuity, stability and good home environment which the law demands for children. (Emphasis supplied mine).

In applying the clearly erroneous standard, our function is not to decide factual issues *de novo. People in Interest of D.M.,* 367 N.W.2d 769, 772 (S.D.1985); *Cunningham v. Yankton Clinic, P.A.,* 262 N.W.2d 508 (S.D.1978).

There was, therefore, no abuse of discretion and this circuit judge should not be reversed either under the decisions of this Court or the specific state statutes referred to in the Chief Justice's dissent. We have long recognized that all courts of our state must judicially recognize and apply the statutes of this state. *State v. Myers,* 411 N.W.2d 402, 405 (S.D.1987); *In re Gibbs,* 51 S.D. 464, 214 N.W. 850 (1927). Finally, when Judge Bradshaw decided this case, Stephanie had no knowledge of the housing she would live in, the school her son would attend, or the immediate neighborhood in which the new family would live. Obviously, Judge Bradshaw was concerned with such a shaky situation and held that such a move was not consistent with the best interests of Trevor. In contradistinction, Trevor had a close relationship with numerous relatives in and around the Watertown area. Little wonder that Judge Bradshaw decided the best interests of this boy was in a known environment contrasted to an unknown environment in a suburb of Cleveland.

Subsequent to the formal decision by the trial court, as a result of a telephonic hearing on December 27, 1991, as reflected by a transcript here on file, the trial court entered an order dated January 8, 1992 which is a clarification order of the November 1, 1991 judgment. This hearing resulted from a motion by Stephanie because she wanted the right to take Trevor out of the state for an out-of-town visit for a weekend, should she so desire. As a result of this hearing, conducted *after* the principal action was decided, the trial judge, in fairness, decided that Stephanie could do so but Trevor's residence was to remain in

South Dakota. Further, to keep a handle on the situation, the trial court ordered that both the father or the mother had to give reasonable notice to the other party if they were to take the child out of state for a visit and to describe the destination. An appeal was taken by Stephanie of the judgment dated November 1, 1991, as clarified by the order dated January 8, 1992. In an affidavit supporting the motion to clarify, Stephanie made it known that her parents resided in Iowa; her husband, Robert Mack *, resided in Ohio; and her husband's parents resided in Louisiana. Apparently, the majority would have us believe by its footnote 2 that Stephanie would not try to remove Trevor to a suburb in Cleveland, Ohio, because she found a job in Watertown, South Dakota, in order to remain with the party's son. Reasoning would have us believe that having married this man, who lives in Ohio, and having fought the trial judge's decision to not remove Trevor to Ohio, that the subsequent fact that she did marry Mack, is all the reason more that she intends to move to Ohio and take the son of these parties with her, if she wins this appeal. Such a move would entirely frustrate or defeat the father's influence over his son or visitation with his son on a daily basis. Her marriage to her lover, Mack, is all the reason more as to why Trevor should not be moved to Ohio. It is rewarding the guilty party in a marriage. Lee E. Fortin was granted a decree of divorce from Stephanie L. Fortin. It is noted in the transcript, page 100, that the trial court mentioned, expressly in his decision, that when she got off work that she would go to the bar and stay until the bar closed at night. And that Lee Fortin would take care of the child, not only at these times, but upon a number of occasions when she would absent herself from the home. Mack has two prior marriages. Tr., page 18. During the divorce trial, she admitted she drank intoxicants, at home and "does not go out so much." Tr., page 23. The transcript further reflects that Stephanie Fortin was romantically involved with Mack at or about the time of the divorce proceedings. Before the divorce, she admitted she told her husband she had gone to Minneapolis to visit an old friend. Later, she admitted that this was a lie, that in truth and fact, she went to Louisiana and visited Mack and his parents (for about 10 days). For her conduct, she should be rewarded? And the father and the little boy's extended family should not be close to him to give him guidance in life? And so that she can take up with her new husband in a far away place, to accommodate her romantic inclinations?

This decision is a travesty of justice. And, accordingly, I dissent.

---

* She was not married when the principal action was heard or decided.