Robert R. CUNNINGHAM, Appellant,

v.

Marthalynn D.
CUNNINGHAM, Appellee.

No. 05–86–00043–CV.

Court of Appeals of Texas,
Dallas.

Aug. 21, 1986.

Rehearing Denied Sept. 26, 1986.

John J. Diggins, Dallas, for appellant.

Thomas A. Melody, Dallas, for appellee.

Before VANCE, HOWELL and McCRAW, JJ.

VANCE, Justice.

Robert R. Cunningham appeals from a default judgment of divorce which dissolved his marriage to Marthalynn Cunningham, divided the property, appointed Marthalynn managing conservator of the only child of the marriage, appointed him possessory conservator, and ordered him to pay child support plus Marthalynn's attorney's fees. Robert did not make a general appearance to contest the merits but, instead, made a special appearance to contest the subject matter jurisdiction and in personam jurisdiction of the court. Consequently, the only issues on appeal are: (1) whether under the Texas Uniform Child Custody and Jurisdiction Act, the trial court was precluded from asserting jurisdiction concerning the custody and support of the child and; (2) whether the trial court had personal jurisdiction over Robert. We

conclude that, because of a prior custody proceeding pending in North Carolina, the trial court did not have subject matter jurisdiction concerning child custody or support. In addition, the trial court did not have personal jurisdiction over Robert. Accordingly, (1) we reverse the judgment of the trial court except as to that part of the decree which dissolves the marriage of the parties; (2) we strike out Marthalynn's judgment for her attorney's fees, her judgment for court costs and her judgment holding Robert liable for the outstanding indebtedness of the marriage; (3) we dismiss her claims for child custody and child support.

Robert and Martha were married on September 26, 1981, and had one child, R.R. Cunningham, born on May 12, 1982. The parties lived in Texas until May of 1984 when they moved to North Carolina. The following September, the parties began living apart and in November executed a settlement agreement which divided the property and set forth the terms of custody and visitation agreed upon by the parties. However, after the agreement was executed, the parties lived together for approximately two weeks, but separated again. Robert, by the terms of the agreement, had custody of R.R. until January 1, 1985. At that time Marthalynn's term of custody began as provided by the agreement. After receiving custody and without Robert's consent, she removed R.R. from North Carolina to Texas. In April, 1985, Robert made a trip to Texas in an effort to visit with R.R., but Marthalynn denied him access to the child.

Robert returned to North Carolina and on May 10, 1985, filed a petition to have sole custody rights over R.R. He alleged that Marthalynn had violated the separation agreement and that Marthalynn had exposed R.R. to places and persons potentially dangerous to his safety and well-being. In addition, Robert made a motion for temporary custody and support, and the court immediately scheduled a hearing date and issued notice. When the constable attempted service of process in Texas at Marthalynn's parents' address, her father advised him that her attorney had instructed the family not to divulge any information about where she could be found. After the efforts to make personal service failed, a copy of the citation was mailed to Marthalynn at her parent's address by certified mail, return receipt requested. The postal service on two occassions attempted to deliver the citation but returned it marked "unclaimed."

On September 6, 1985, the North Carolina court entered an order awarding temporary custody to Robert until a final hearing could be held on the merits of the petition. The court found that it had subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act, N.C.GEN. STAT. § 50A–3(a)(1) (1984), because: (1) North Carolina was the home state of the child and had been the child's home state within six months before the commencement of the proceeding; (2) the child's absence from the state was due to his removal and retention by Marthalynn while Robert still resided in North Carolina; and (3) no other custody proceeding was pending in another state. The court further found that Robert had fulfilled all of the requirements of the Uniform Child Custody Jurisdiction Act (UCCJA).

The North Carolina court further found that Marthalynn's conduct and her family's conduct supporting Marthalynn's secreting herself and the child was *prima facie* detrimental to the child. Under section 50–13.-5(d)(2) of the North Carolina General Statutes, once the trial court has gained jurisdiction under its UCCJA, it may enter an ex parte order for temporary custody prior to service of process if the circumstances of the case render it appropriate. Consequently, in view of Marthalynn's conduct, the court awarded temporary custody to Robert and ordered Marthalynn to return the child to Robert and appear in court for a hearing on the merits.

Marthalynn, however, after residing in Texas with R.R. for six months, filed for divorce and managing conservatorship of R.R. in Texas on July 5, 1985. Robert

made a special appearance on October 25 contesting the subject matter and personal jurisdiction of the court. At the conclusion of the hearing the trial court overruled Robert's special appearance regarding matters of child custody but sustained it as to child support. Apparently, the court later withdrew this ruling because its judgment ordered Robert to pay $450 per month in child support in addition to court costs, and Martha's attorney's fees. In addition, the court awarded managing conservatorship of R.R. to Martha. The Texas court found that North Carolina did not have jurisdiction over the cause because: (1) Martha was not served with citation; (2) the child, R.R., had been in Texas under Martha's care and custody for six months prior to the filing of the petition in Texas; and (3) the separation agreement, under North Carolina law, was null and void.

Robert contends that the Texas trial court erred in asserting subject matter and personal jurisdiction in this cause. We agree. The Texas trial court did not have subject matter jurisdiction over this case except to dissolve the marriage between the parties. *Blenkle v. Blenkle*, 674 S.W.2d 501, 503 (Tex.App.—El Paso 1984, no writ). Moreover, the Texas trial court did not have personal jurisdiction over Robert. Because this is a case with little Texas precedent, we rely in considerable measure on other jurisdictions who have adopted the UCCJA.

## SUBJECT MATTER JURISDICTION

The Texas Uniform Child Custody Jurisdiction Act, sections 11.51 through 11.75 of the Texas Family Code,[1] in pertinent part provides:

§ 11.51.

(a) The general purposes of this subchapter are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody that have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

\*   \*   \*   \*   \*   \*

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

\*   \*   \*   \*   \*   \*

(7) facilitate the enforcement of custody decrees of other states

\*   \*   \*   \*   \*   \*

§ 11.53 Jurisdiction

(a) A court of this state that is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree or order if:

(1) this state:

(A) is the home state of the child on the date of the commencement of the proceeding; or

(B) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody ... and a parent or person acting as parent continues to live in this state;

\*   \*   \*   \*   \*   \*

§ 11.52 Definitions

(5) "Home state" means the state in which the child immediately preceding the time involved lived with his parents ... for at least six consecutive months,....

§ 11.56 Simultaneous Proceeding in Other State

(a) A court of this state may not exercise its jurisdiction under this subchapter if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter, unless the proceeding is stayed by the court of the other state....

■ The UCCJA and its federal counterpart, the Parental Kidnapping Prevention

---

1. All references are to the Texas Family Code (Vernon Supp.1986) unless otherwise noted.

Act of 1980 (PKPA), 28 U.S.C. § 1738A (Vernon Supp.1986), were enacted to prevent jurisdictional conflict and competition over child custody and, in particular, to deter parents from abducting children for the purpose of obtaining custody awards. *Peterson v. Peterson*, 464 A.2d 202, 204 (Me.1983). Both statutes attempt to "eliminate jurisdictional fishing with children as bait." *Id.; Wheeler v. District Court*, 186 Colo. 218, 220, 526 P.2d 658, 660 (1974).

The UCCJA specifically rejects the necessity for a court to have personal jurisdiction over both parents before a trial court can determine the custody status of a minor child. Commissioner's Note to Uniform Child Custody Jurisdiction Act §§ 12, 13, 9 U.L.A. 150–51 (1979). Child custody determinations, as distinguished from support actions, under the UCCJA are proceedings in rem affecting status. *Id.* at 150. Morever, the physical presence of the child is not a prerequisite for jurisdiction to determine his custody. TEX.FAM.CODE ANN. § 11.53(c) (Vernon Supp.1986).

Further, the UCCJA establishes the dominance of "home state" jurisdiction for proceedings to make both an initial decree or a modification and a decree. Under section 11.53, a state court has jurisdiction to make an initial custody order if it is the home state of the child at the commencement of the proceeding or if it had been the home state of the child within six months of the commencement of the proceeding "and the child is absent from this state because of his removal or retention by a person claiming his custody ... and a parent or person acting as parent continues to live in this state." Section 11.53(a)(1)(B). When two states have a jurisdictional base under section 11.53, priority in time in the commencement of the proceeding governs which court will proceed with the action. Commissioner's Note to § 6, 9 U.L.A. 135 (1979); *see* section 11.56.

██ In the instant case, North Carolina, which enacted substantially identical provisions when it adopted the UCCJA, had subject matter jurisdiction over this case because: (1) North Carolina had been R.R.

Cunningham's "home state" within six months of the filing of the proceeding in North Carolina and the child's absence from the state was due to the mother's removal of the child while the father was still residing in North Carolina; and (2) the proceeding in North Carolina commenced before the Texas proceeding. The Cunninghams moved to North Carolina in May of 1984. The child, R.R., resided in North Carolina for approximately seven consecutive months before his removal on January 1, 1985. Consequently, at the time of his removal, North Carolina was the child's "home state." Robert's petition was filed on May 10, 1985 within six months of R.R.'s removal and *before* any custody proceeding had been commenced in Texas. Marthalynn did not file her Texas suit until July 5, 1985.

Because the jurisdiction of the North Carolina court was exercised in *conformity to the UCCJA*, the Texas trial court, under section 11.56, could not exercise jurisdiction. Marthalynn argues, however, that the separation agreement between the parties was void because they had cohabited together after executing the agreement, and under North Carolina law, cohabitation renders such agreements null and void. She, therefore, maintains that the provision in the agreement which conferred jurisdiction on the North Carolina courts was null and void and, consequently, North Carolina had no jurisdiction over the custody dispute. We disagree.

First, the basis of jurisdiction in North Carolina was under its UCCJA statutes, not the separation agreement. The agreement neither created nor defeated jurisdiction; North Carolina would have jurisdiction without an agreement. Although Robert complained that his rights under the separation agreement had been violated, he sought immediate temporary custody and permanent exclusive custody rights alleging that Marthalynn, in removing the child to Texas and denying him access to the child, had exposed the child to places and persons potentially dangerous to his safety, spiritual, emotional, educational, and physi-

cal well-being. In essence, Robert's suit was for an initial custody decree, not a suit to enforce the separation agreement.

Second, Marthalynn's contention that Robert is not entitled to custody because he is attempting to enforce a supposedly void separation agreement is an issue for determination by the court possessing jurisdiction; to-wit, the North Carolina court. The contention that the North Carolina court had no jurisdiction because the agreement was void is the product of inverse logic. A determination of jurisdiction must precede, not follow, a ruling as to the validity of the agreement. Under section 11.56, the only issue that the Texas court could have determined when shown that there was a prior custody proceeding in another state was whether that state was exercising "jurisdiction substantially in conformity with this subchapter [the UCCJA]." Section 11.56.

■ Under such circumstances, a trial court must determine if the other state is the child's "home state" or if the prior proceeding was begun in conformity to any jurisdictional base enumerated in section 11.53. When a sister state is already exercising jurisdiction in conformity with the UCCJA at the time of filing in Texas, the only power that the trial court has is to dismiss. *See Porter v. Johnson*, 712 S.W.2d 598 (Tex.App.—Corpus Christi, no writ). In the instant case, because the North Carolina trial court was exercising subject matter jurisdiction in conformity to section 11.53, the trial court erred in not dismissing the custody and support action.

Marthalynn, however, contends that the North Carolina court did not have jurisdiction because she was not given notice of the proceedings in North Carolina and her presence in Texas with the child for six months established Texas jurisdiction over the cause. We disagree. The UCCJA and PKPA were enacted to prevent the type of situation that we have before us. The record before us clearly shows that Marthalynn intentionally evaded service of process. She cannot now use her deliberate evasion as a basis of a claim of right.

*Siler v. Storey*, 677 S.W.2d 504, 507 (Tex. 1984). "To do so would make a mockery of the Act." *Id.* at 507. Consequently, we hold that Texas did not have subject matter jurisdiction over this custody dispute.

## PERSONAL JURISDICTION

■ Robert contends that the Texas trial court did not have personal jurisdiction and, therefore, had no authority to order him to pay court costs or to pay Marthalynn's attorney's fees or to hold him liable for the outstanding indebtedness of the marriage. We agree. When Robert left Texas in May of 1984, he completely severed his ties with Texas and established a new domicile in North Carolina. Robert owns no property in Texas, is not conducting business in Texas, was not served with process in Texas, and did not submit to the jurisdiction of the Texas court. His only recent contact with Texas was when he came to Texas to visit with his child. The assumption of personal jurisdiction offends "traditional notions of fair play and substantial justice" when there is no act whereby the defendant avails himself of the privilege of conducting activities within the forum state or when the unilateral act of the plaintiff in moving to the forum state is the only basis of jurisdiction. *Kulko v. Superior Court*, 436 U.S. 84, 93–94, 98 S.Ct. 1690, 1697–1698, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

In the present case, both parents had left Texas and established a new domicile in North Carolina. Marthalynn's unilateral removal of the child to Texas without Robert's approval is not sufficient to establish any basis meeting the requirements of due process whereby Texas courts could have jurisdiction over Robert.

Marthalynn argues that Robert waived his objection to the personal jurisdiction of the court because he failed to obtain a ruling on that issue. We disagree. At the conclusion of the "special appearance"

hearing, the trial judge made this statement:

> The special appearance as filed, I'm going to overrule as to the child. In this instance this Court has jurisdiction of the divorce action. The child has been here six months; of course, *the special appearance is good as to child support that might be ordered....*

(Emphasis added.) Although the order is not entirely clear, we conclude that this language constitutes a ruling sustaining Robert's objection to the court's personal jurisdiction over him which would make him liable for child support. Although the trial court later withdrew its ruling and ordered Robert to pay child support, the error of the court in exercising personal jurisdiction was preserved.

We conclude, therefore, that the trial court did not have subject matter jurisdiction as to child custody and child support. We also hold that the trial court did not have personal jurisdiction over Robert.

The divorce is affirmed. In all other respects the judgment of the court below is reversed and the petitioner's claims stricken and dismissed.