TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-04-00229-CV







In re Brenda Lee Lewin







ORIGINAL PROCEEDING FROM MILAM COUNTY





O P I N I O N




 Relator Brenda Lee Lewin, a resident of New Jersey, requests that this Court vacate
a temporary order awarding the right to determine primary residence of her daughter to the child's 
father, Robert George Farnsworth. This proceeding presents complex jurisdictional issues created
by the interplay between the Hague Convention on the Civil Aspects of International Child
Abduction (1) and the Uniform Child Custody Jurisdiction and Enforcement Act, (2) as codified in family
code section 152.202. (3) Because the trial court did not first enforce an order from a Canadian court
pursuant to the Hague Convention ordering Farnsworth to return the child to Lewin, and because the
trial court was otherwise without subject-matter jurisdiction to enter the temporary order modifying
custody, we will conditionally grant the writ.

FACTUAL AND PROCEDURAL BACKGROUND


 Lewin and Farnsworth, who never married, are the parents of a daughter, T.M.F., born
in 1998 while the parents lived in New Jersey. The three moved from New Jersey to Florida, but
eventually settled in Milam County, Texas, in 2000. Lewin and Farnsworth's relationship soured
and, in October 2002, Lewin left Texas with the child and moved in with her parents in Wayne, New
Jersey. Lewin obtained a temporary restraining order against Farnsworth in New Jersey, alleging
domestic violence. Farnsworth went to New Jersey and appeared at a hearing in which the
restraining order was dissolved. After the court appearance, Farnsworth visited with the child. He
returned to Lewin's parents' home the next day and asked to take the child out for breakfast. Instead
of taking the child to breakfast, however, Farnsworth drove off with her and returned to Texas. Once
in Texas, he filed a suit affecting the parent-child relationship (SAPCR) seeking joint managing
conservatorship of the child and asking that he be designated the conservator with the exclusive right
to decide the child's primary residence. On October 22, 2002, Lewin filed an answer and counter-petition seeking appointment as sole managing conservator. On November 5, 2002, the district court
entered an order (the original SAPCR order) granting joint managing conservatorship and
designating:


Brenda Lee Lewin, as the joint managing conservator of the child, shall have
exclusive right to determine the primary residence of the child so long as Brenda Lee
Lewin ceases to reside with her parents at 12 Brookside Road, Wayne New Jersey,
and obtains a residence of her own by September 1, 2003 and so long as the primary
residence of Brenda Lee Lewin and the child is located within 40 miles of the city
limits of Wayne, New Jersey. IT IS FURTHER ORDERED AND DECREED that,
if Brenda Lee Lewin fails to obtain a place of residence for herself and the child by
September 1, 2003, or fails to reside within 40 miles of the city limits of Wayne, New
Jersey, or resumes living with her parents after September 1, 2003, Robert George
Farnsworth shall have the right to determine the primary residence of the child
subsequent to September 1, 2003 . . . .



The original SAPCR order set out a visitation schedule for the period between November 5, 2002
and August 31, 2003 in which the child would stay with each parent for periods of time ranging from
a few weeks to three months. (4) The order then set out alternative visitation schedules depending on
whether the parent without the right to designate primary residence does or does not live within 100
miles of the residence of the child.

 Lewin and Farnsworth followed the schedule set forth in the original SAPCR order
through the summer of 2003; the child lived in New Jersey when she was with Lewin and in Texas
when she was with Farnsworth. When Farnsworth picked up the child on July 5, 2003, however, he
took the child to Montreal, Quebec, and the two lived in an apartment with Farnsworth's mother. 
Farnsworth sent a handwritten letter to the Milam County District Clerk, with a copy to Lewin,
reflecting his change of address. This letter was dated July 6, 2003, but was not filed with the clerk's
office until August 21, 2003. (5) On August 16, 2003, Lewin sent a letter to Farnsworth and the Milam
County District Clerk giving her new address in New Jersey and indicating that she had moved from
her parents' home as required by the original SAPCR order. This letter was received by the district
clerk on August 25th.

 On August 26, 2003, Farnsworth filed suit in Canada to modify the custody
arrangements, alleging that Lewin no longer wanted the child and that it appeared the child had been
abused under her care. Attached to the Canadian suit was an affidavit by Farnsworth verifying the
petition in which Farnsworth identifies himself, as translated in the record, as "residing and
domiciled at 7751 Avrille Avenue, Apt. #8, Anjou, district of Montreal, Province of Quebec." In
violation of the original SAPCR order, Farnsworth did not return the child to Lewin on September
1, 2003. His attorney sent a letter to the Milam County District Clerk's Office informing the Texas
Court that:


a proceeding has been filed in the Quebec Superior Court concerning the custody of
the minor child [T.M.F.]. This proceeding was filed by our client Robert George
Farnsworth who is now a resident of the province of Quebec, more precisely at 7751
Avrille Ave., apt:#8, Anjou, Quebec.


As a matter of fact, the mother and defendant in the proceeding, Brenda Lee Lewin
has also moved out of your jurisdiction and is now living at 54 River Road, Wayne,
New Jersey, 07470, USA.

With this letter, Farnsworth's Canadian attorney filed the petition, in French, and an affidavit
demonstrating that Lewin had been served in the Canadian modification suit.

 After Farnsworth wrongfully retained the child past September 1, 2003, Lewin filed
an application under the Hague Convention (6) seeking the return of the child. Farnsworth sought to
retain the child on the grounds that there was evidence of abuse and that Lewin had acquiesced in
his retention of the child. In November, the Canadian court conducted a three-day evidentiary
hearing on Lewin's application. At the conclusion of the hearing, the court found that Farnsworth
had unlawfully refused to return the child to Lewin, Lewin had not acquiesced in Farnsworth's
continued possession of the child, and that Farnsworth's evidence of possible abuse was inconclusive
and not sufficient grounds for failing to order the return of the child in accordance with the terms of
the original SAPCR order. The court ordered that the child be returned to Lewin by noon the next
day, November 26, 2003, and that Farnsworth pay Lewin $10,066.57 in Canadian funds for
attorney's fees and travel expenses necessary to obtain the Hague Convention order. 

 The next day, Farnsworth did not return the child to Lewin as ordered, but rather fled
with T.M.F. without giving notice of their whereabouts to Lewin. Although a warrant was issued
in Canada for Farnsworth's arrest, he had already crossed the international border by the time the
Canadian police attempted to enforce it. On December 3, 2003, Farnsworth filed a motion in Milam
County to modify the parent-child relationship alleging that the child had been neglected by Lewin
and abused physically and sexually. He requested that he be given the right to designate the child's
primary residence and sought a temporary order restricting Lewin's right to visitation only in Milam
County. A temporary ex parte order, signed by the trial court, granting the relief requested in the
motion was filed with the Milam County District Clerk less than an hour after the motion was filed. 
That afternoon, Lewin filed a motion to vacate the temporary order and for a writ of attachment,
citing the Hague Convention order that Farnsworth return the child to her on November 26.

 Lewin also filed a suit to enforce the Hague Convention order and to obtain custody
of the child in New Jersey on December 4, 2003. Relief was denied on December 5, 2003 by the
New Jersey Court in a handwritten order stating:


All relief requested is denied. Submissions by [plaintiff] indicate that Texas was/is
the home state of [the child]. Jurisdiction is with the State of Texas until further
order of that court indicating that they are specifically changing same.



 A hearing was held in Milam County on December 11, 2003, in which Lewin and
Farnsworth both testified. Lewin argued at the hearing that the Hague Convention order
commanding Farnsworth to return the child was enforceable and that Milam County did not have
jurisdiction to modify custody because the Canadian court had determined in November that both
Lewin and Farnsworth, and their child, no longer resided in Texas. Farnsworth claimed residency
in Texas and argued that Lewin failed to meet the provisions of the original SAPCR order which
allowed her to continue to determine the primary residence of the child only if she "ceases to reside
with her parents and obtains a residence of her own by September 1, 2003." Farnsworth insisted
that, by moving in with her fiancé, Lewin had not established a residence of her own. The Milam
County court entered another temporary order on December 12, confirming Farnsworth as the
managing conservator with the right to designate the primary residence of the child and enjoining
Lewin from visiting with the child outside of Milam County. Findings of fact were signed by the
court on January 2, 2004, and Lewin's motion for rehearing was denied on March 3, 2003. This
petition for a writ of mandamus followed.


DISCUSSION


 In considering Lewin's petition, we must navigate the multitude of jurisdictional
questions that arise when parents separate across state and international boundaries and when
children are wrongfully secreted from one jurisdiction to another. These issues of jurisdiction are
governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), as adopted
in Chapter 152 of the Texas Family Code, and the Hague Convention on the Civil Aspects of
International Child Abduction. See Tex. Fam. Code Ann. §§ 152.101-.313 (West 2002); Hague
Convention on the Civil Aspects of International Child Abduction, opened for signature Oct. 25,
1980, T.I.A.S. No. 11,670, reprinted in 51 Fed. Reg. 10,494 (1986)) (hereafter Hague Convention). 
Our analysis of the jurisdictional issues in the case must be conducted in light of the overarching
purposes of both the UCCJEA and the Hague Convention: to prevent conflicting jurisdiction and
relitigation of child custody issues and to deter child abduction. See In re McCoy, 52 S.W.3d 297,
302 (Tex. App.--Corpus Christi 2001, no pet.) (stated purposes of the UCCJEA include avoiding
jurisdictional competition between courts of different states, discouraging continuation of
controversies over child custody, and deterring abductions and unilateral removals of children
undertaken to obtain custody awards); In re Vernor, 94 S.W.3d 201, 207 (Tex. App.--Austin 2002,
no pet.) ("The purpose of the Convention is to inhibit the abduction of children across international
borders by establishing procedures for their prompt return to their country of 'habitual residence.'").


Mandamus 

 As a preliminary matter, we note that mandamus is an appropriate vehicle to
challenge the temporary orders in this case. Mandamus relief is available only if a court clearly
abused its discretion and no adequate remedy is available by appeal. In re Southwestern Bell Tel.
Co., 35 S.W.3d 602, 605 (Tex. 2000). Mandamus is proper if a court acts without subject- matter
jurisdiction. Id.; In re Barnes, 127 S.W.3d 843, 847 (Tex. App.--San Antonio 2003, no pet.). In
recognition of the unavailability of appeal of temporary orders and the demand for speedy resolution
of child custody matters, Texas courts have repeatedly considered challenges to a court's improper
assertion of jurisdiction in child custody matters through a petition for a writ of mandamus. See
Proffer v. Yates, 734 S.W.2d 671, 672 (Tex. 1987); Barnes, 127 S.W.3d at 847 (citing Little v.
Daggett, 858 S.W.2d 368, 369 (Tex. 1993)); McCoy, 52 S.W.3d at 301. It would be a tremendous
burden on child custody litigants to be forced to comply with temporary orders regarding such
matters as child support, visitation, and custody with no right of appeal when the issuing court may
have no jurisdiction over the matter. McCoy, 52 S.W.3d at 302. (7) 

The Hague Convention 

 In considering Lewin's petition, we are compelled to first examine the
appropriateness of the Milam County district court's assertion of jurisdiction to enter temporary
orders modifying the original SAPCR order without immediately enforcing the Canadian order
requiring Farnsworth to return the child to Lewin pursuant to the Hague Convention. The Milam
County court did not expressly rule on Lewin's motion for a writ of attachment seeking enforcement
of the Hague Convention order. Instead, it characterized the Hague Convention order as an
enforcement of the original SAPCR order and apparently decided that the Canadian court wrongly
interpreted that order. The Hague Convention, however, is not merely a device to enforce custody
determinations. Rather, it is a set of rules that allows the courts of different nations to work together
to avoid the sort of forum shopping and self help engaged in by Farnsworth, regardless of the
ultimate resolution of the underlying custody dispute. 

 The Hague Convention prioritizes the return of wrongfully removed or retained
children over any other custody proceedings. Article 16 of the Hague Convention states:


After receiving notice of a wrongful removal or retention of a child in the sense of
Article 3, (8) the judicial or administrative authorities of the Contracting State to which
the child has been removed or in which it [the child] has been retained shall not
decide on the merits of rights of custody until it has been determined that the child
is not to be returned under this Convention or unless an application under this
Convention is not lodged within a reasonable time following receipt of notice.



Hague Convention, art. 16 (footnote added). The Hague Convention deters parental abductions by
depriving the abductor's actions of any practical or juridical consequences, thereby eliminating the
primary motivation for the abduction--to obtain an advantage in custody proceedings by
commencing them in another country. Holder v. Holder, 305 F.3d 854, 860 (9th Cir. 2002); Mozes
v. Mozes, 239 F.3d 1067, 1070 (9th Cir. 2001). "The Convention operates to restore the status quo
as it existed before the wrongful removal of a child in a signatory nation." Vernor, 94 S.W.3d at 207
(citing England v. England, 234 F.3d 268, 271 (5th Cir. 2002)); Flores v. Contreras, 981 S.W.2d
246, 248 (Tex. App.--San Antonio 1998, pet. denied).

 When Farnsworth unlawfully avoided the Hague Convention order in Canada and fled
to Milam County, he did precisely what the Hague Convention and Chapter 152 of the Texas Family
Code were enacted to prevent. After declaring himself a resident of Quebec, Farnsworth had a valid
custody suit pending in Canada seeking to modify the original SAPCR order. Under the Hague
Convention, he was also permitted to litigate his concerns over the safety of his daughter's return
to New Jersey to live with her mother. See Hague Convention, art. 13 (court not bound to order
return of child when there is grave risk that return will expose child to physical or psychological
harm or otherwise place child in an intolerable situation). After a hearing, the Canadian court
determined that there was no grave risk of harm to the child and ordered her return to Lewin. 
Dissatisfied with the Canadian court's decision, Farnsworth disobeyed the order, fled with the child
across an international boundary where the warrant for his arrest could not be enforced, withdrew
his custody proceeding, and sought to relitigate the same issues in Milam County. Both the language
and the very purpose of the Hague Convention and Chapter 152 of the Family Code prohibit this sort
of forum shopping and self help.

 Once the Milam County trial court was presented with a valid order under the Hague
Convention commanding the return of the child to Lewin in New Jersey, the court was obligated to
enforce it. Article 16 of the Hague Convention prohibited the trial court from considering the merits
of Farnsworth's modification motion before enforcing the Hague Convention order. See Hague
Convention, article 16; Duquette v. Tahan, 600 A.2d 472, 476-77 (N.J. Super. Ct. App. Div. 1991);
Becker v. Becker, No. FD-14-14-90, 1989 N.J. Super. LEXIS 538, *6 (N.J. Super. Ct. App. Div.
1989) ("[I]t is clear that the Convention would require the return of a child even though the requested
State may have entered an order granting custody to the person having removed the child."); Sheikh
v. Cahill, 546 N.Y.S.2d 517, 522 (N.Y. Sup. Ct. 1989) (citing article 16 of Hague Convention and
declining to make a determination as to custody). The trial court had notice of the Hague
Convention order through Lewin's motion seeking a writ of attachment. At that point, the Texas
court was obligated to enforce the order and return the parties to the factual status quo prior to
Farnsworth's wrongful retention of the child in Canada and subsequent wrongful removal to Milam
County. See Hague Convention, article 16; Duquette, 600 A.2d at 476-77; Becker, 1989 N.J. Super.
LEXIS 538, at *6; Sheikh, 546 N.Y.S.2d at 522.

 Furthermore, section 152.302 of the Texas Family Code provides that a court may
enforce an order for the return of a child made under the Hague Convention on the Civil Aspects of
International Child Abduction as if it were a child custody determination. Tex. Fam. Code Ann.
§ 152.302 (West 2002). Section 152.303 requires a Texas court to enforce a child custody
determination of another state if that court had jurisdiction in conformity with the code and that
determination has not been previously modified. Id. § 152.303. Unless a trial court issues a
temporary emergency order pursuant to section 152.204 of the Texas Family Code, the trial court
must enforce a child custody determination, including a Hague Convention order granting immediate
physical custody of a child, and may not modify that order. See Tex. Fam. Code Ann. § 152.310(a)
(West 2002); Saavedra v. Schmidt, 96 S.W.3d 533, 543 (Tex. App.--Austin 2002, no pet.) (upon
finding that party is entitled to immediate physical custody of a child pursuant to a custody
determination, "the court must award that party custody without relitigating the custody rights"). 
Because the trial court did not first return the child to Lewin, its consideration of Farnsworth's
modification motion and entry of a temporary order on December 12, 2003 were contrary to the
provisions of both the Hague Convention and the Texas Family Code. We therefore hold that the
trial court abused its discretion in entering temporary orders relating to Farnsworth's custody suit
instead of immediately enforcing the Hague Convention order.


Jurisdiction

 Lewin's primary argument in seeking mandamus relief is that the temporary orders
entered in Farnsworth's modification suit are void because the court lacked subject-matter
jurisdiction over the case. 


Exclusive Continuing Jurisdiction

 The trial court heard extensive evidence on the issue of jurisdiction at the December
11, 2003 evidentiary hearing in Milam County. At the conclusion of the hearing, the trial court held
that it had exclusive continuing jurisdiction over the child custody proceedings and issued a
temporary order transferring the right to designate the child's primary residence from Lewin to
Farnsworth. The court noted that the mere fact that all the parties had moved from the state did not
deprive the court of its exclusive continuing jurisdiction. This was correct. A court's exclusive
continuing jurisdiction does not vanish immediately once all the parties leave the state. Rather,
exclusive continuing jurisdiction remains with the court that made the initial child custody
determination unless:


(1) a court of this state determines that neither the child, nor the child and one
parent, nor the child and a person acting as a parent, have a significant
connection with this state and that substantial evidence is no longer available in
this state concerning the child's care, protection, training, and personal
relationships; or


(2) a court of this state or a court of another state determines that the child, the
child's parents, and any person acting as a parent do not presently reside in
this state.



Tex. Fam. Code Ann. § 152.202 (West 2002). The trial court erred, however, in failing to recognize
that section 152.202(a)(2) was satisfied when the Canadian court, which is considered to be a court
of another state, see Tex. Fam. Code Ann. § 152.105(a) (West 2002) ("a court of this state shall treat
a foreign country as if it were a state of the United States for the purpose of applying this subchapter
and subchapter C"), determined in November 2003 that Farnsworth, Lewin, and the child did not
then presently reside in Texas. See id. § 152.202 (a)(2).

 The statute's use of the language "presently reside" is significant. The
commissioner's comment to the UCCJEA explains:


The phrase "do not presently reside" is not used in the sense of a technical domicile. 
The fact that the original determination state still considers one parent a domiciliary
does not prevent it from losing exclusive, continuing jurisdiction after the child, the
parents, and all persons acting as parents have moved from the state.



UCCJEA § 202, cmt., 9 U.L.A. 649, 674 (1999). As such, Farnsworth's arguments at the hearing
and in his response to Lewin's petition for a writ of mandamus concerning his intent to return to
Texas and the technical definition of residence in Canadian law are irrelevant. It is clear from the
face of the Hague Convention order, which is considered a child custody determination, see Tex.
Fam. Code Ann. § 152.302, that a court of another state had determined that both parents and the
child had left Texas. The style of the Canadian order, as translated in the record, lists Farnsworth
as "residing at 7751, Avrille Avenue, Apartment 8, Anjou, judicial district of Montreal Province of
Quebec, Canada" and Lewin as "residing and domiciled at 54, River Road, Wayne, New Jersey,
United States of America." The Canadian order included the following findings:


 [7] WHEREAS Plaintiff [Lewin] moved from her parents' house and established
residence with her fiancé, Chistopher Friedrich, at 54 River Road, Wayne, New
Jersey, on August 16, 2003;


 [8] WHEREAS in the exercise of his last possession period before Plaintiff
established the child's primary residence, Defendant picked up the child at
Plaintiff's parents' house . . . and brought her to Montreal to live with him in
his mother's apartment;


 [9] WHERE unknown to Plaintiff he had established residence there after moving
from Texas . . . .


***


[17] WHEREAS in the absence of proof of an intolerable situation for the child
were she to be returned to New Jersey, the Court considers that both the Texas
judgment and the aforementioned Quebec Act respecting the Civil Aspects of
International and Interprovincial Child Abduction require that any
determination of her future custody or of access to her be decided by the
competent authorities of the state of New Jersey;


[18] WHEREAS it is accordingly in the best interest of the child that she return to
Wayne, New Jersey, her primary residence determined by the Plaintiff in
conformity with the Texas Judgment;


***


[20] WHEREAS in view of the Defendant's unlawful refusal to return the minor
child to her habitual residence, Plaintiff has proven $10,066.57 in Canadian
funds of legal and traveling expenses which Defendant should compensate;


***


[24] [The court] ORDERS the immediate return of the minor child, [T.M.F.], to her
primary residence at 54 River Road, Wayne, New Jersey, said return to be
effected by transferring child . . . at 12:00 p.m., noon, Wednesday, November
26, 2003 . . . .



Farnsworth's argument that the Hague Convention order was not a proper determination of the
residency of the parties is undermined by the fact that he explicitly represented to the Canadian court
that he was a resident of Canada. (9) Farnsworth swore out an affidavit in his Canadian suit in which
he stated that he was a resident of Quebec. He made similar representations to the Milam County
court, submitting a handwritten letter to the district clerk stating that he had "moved" to Canada, and
his attorney filed a letter in Milam County informing the Texas court that Farnsworth "is now a
resident of the province of Quebec." Having left Texas and represented that he is a resident of
Quebec in the Canadian court, Farnsworth may not return to Texas and challenge the Canadian
court's finding based on his own assertions. Moreover, the Milam County court's original SAPCR
order recognized that Lewin resided in New Jersey, and that because Lewin had the right to establish
the child's primary residence, the child was a resident of New Jersey as well. We hold that the
Milam County district court lost exclusive continuing jurisdiction over this SAPCR. See Tex. Fam.
Code Ann. §152.202(b).


Regaining Initial Jurisdiction

 Even though the trial court did not retain exclusive continuing jurisdiction, it could
regain jurisdiction if it met the requirements for initial child custody jurisdiction. See Tex. Fam.
Code Ann. § 152.202(b). The relevant provisions of section 152.201 governing a trial court's initial
jurisdiction to make a child custody determination would demonstrate the trial court's jurisdiction
if: 


 [Texas] is the home state of the child on the date of the commencement of the
proceeding, or was the home state of the child within six months before the
commencement of the proceeding and the child is absent from this state but a
parent or person acting as a parent continues to live in this state; or



 (2) a court of another state does not have jurisdiction under Subdivision
(1), or a court of the home state of the child has declined to exercise
jurisdiction on the ground that this state is the more appropriate forum
under Section 152.207 or 152.208, and:

 

 (A) the child and the child's parents, or the child and at least one
parent or a person acting as a parent, have a significant
connection with this state other than mere physical presence; 
and


 (B) substantial evidence is available in this state concerning the
child's care, protection, training, and personal relationships . . . .



Id. § 152.201(a) (West 2002). A child's "home state" is the "state in which the child lived with a
parent or a person acting as a parent for at least six consecutive months immediately before the
commencement of a child custody proceeding." Id. § 152.102(7) (West 2002). A temporary absence
of a parent is part of the consecutive period. Id.

 Contrary to the New Jersey court's December 5, 2003 order denying relief in Lewin's
suit to modify custody, Texas is not the "home state" of the child under the provisions of the Texas
Family Code. At the time of the December 11, 2003 hearing in Milam County, the child had not
lived in Texas for any period of time since April 2003. Moreover, the original SAPCR order granted
Lewin the right to determine the child's primary residence. She chose New Jersey and at all relevant
times, Lewin resided there with the child. The original SAPCR order clearly recognized New Jersey
as the child's primary residence as it conditioned Lewin's continued right to determine the child's
primary residence on their living within 40 miles of Wayne, New Jersey. The child lived in New
Jersey beginning, at the very latest, when the child was returned to Lewin after visitation with
Farnsworth on December 14, 2002. Although the child spent a significant amount of time outside
of New Jersey during her visitation with Farnsworth, these visits to Texas and Canada were
temporary absences from her primary residence in New Jersey.

 In Lemley v. Miller, this Court considered a similar situation in which a child left
Texas for eleven months during a parent's active military service in Germany. See 932 S.W.2d 284,
285 (Tex. App.--Austin 1996, no writ.). The child returned from Germany to Texas, and a suit for 
modification was filed a month later. Id. Citing the temporary nature of the active military service
placement in Germany and the child's return to the same home town in Texas, this court held that
the child's eleven-month stay in Germany was a temporary absence. Id. at 286; see also Maqsudi
v. Maqsudi, 830 A.2d 929, 937-38 (N.J. Super. Ct. Ch. Div. 2002). As in Lemley, we decline to
consider the time the child spent in Texas and Canada during visitation with Farnsworth, or the time
while he wrongfully retained the child, as anything more than a temporary absence from New Jersey. 
See Lemley, 932 S.W.2d at 286. Time spent away from a state during a temporary absence is
counted as time in the state for the purposes of determining a child's "home state." Tex. Fam. Code
Ann. § 152.102(7). The child had lived in New Jersey, with temporary absences, for almost a year
prior to the December 11, 2003 hearing, and therefore, the child's home state was New Jersey. 
Because New Jersey would have jurisdiction as the "home state" of the child, the Milam County trial
court did not regain initial jurisdiction. Id. § 152.201(2). (10) 

Unjustifiable Conduct

 Regardless of other arguments concerning the Texas court's possible jurisdiction over
the modification suit, Farnsworth's unjustifiable conduct--in wrongfully retaining the child in
Canada beyond the September 1 deadline for returning her to Lewin and in abducting the child to
avoid the Hague Convention order that he return her to Lewin at noon on November 26--deprived
the Texas court of subject-matter jurisdiction. See id. § 152.208. A court "shall decline to exercise
its jurisdiction" if the court has jurisdiction "because a person seeking to invoke its jurisdiction has
engaged in unjustifiable conduct." Id. (11) Declining jurisdiction under this provision of the family
code is mandatory. In the Interest of S.L.P., 123 S.W.3d 685, 689 (Tex. App.--Fort Worth 2003,
no pet.). Even though Lewin's arguments concerning unjustifiable conduct were not presented to
the trial court, jurisdictional issues are not waivable. Lemley, 932 S.W.2d at 286. 

 Farnsworth's actions in these proceedings demonstrate a pattern of unjustifiable
conduct and epitomize the problems that Chapter 152 of the family code was enacted to curtail. 
From the beginning of this child custody dispute, Farnsworth began taking matters into his own
hands. After his New Jersey court appearance in October 2002, Farnsworth deceived Lewin and fled
with the child by car to Texas. Later, Farnsworth again decided to preempt the role of the courts by
unlawfully retaining the child in Canada based on his personal interpretation that Lewin had violated
the original SAPCR order, rather than obtaining judicial sanctions for his desired change in the
custody arrangements. Farnsworth did seek judicial intervention from a Canadian court, obtaining
its jurisdiction by asserting his change of residence to Quebec. Then, unsatisfied with that court's
ruling that he must return the child to Lewin, he again flouted a court order and hastily transported
the child across the international border to avoid an arrest warrant for abducting the child. Seeking
a friendlier forum, Farnsworth reasserted his Texas residency and sought to modify the custody order
in Milam County raising the same allegations of abuse that had been considered and rejected by the
Canadian court.

 Courts simply do not permit parents to kidnap children. The statutory framework of
the UCCJEA, as adopted in Chapter 152 of the Texas Family Code, was "particularly designed to
deter parents from abducting children for the purposes of obtaining custody awards." In the Interest
of Carpenter, 835 S.W.2d 760, 762 (Tex. App.--Amarillo 1992, no writ); see also Saavedra, 96
S.W.3d at 540; McCoy, 52 S.W.3d at 302; Cunningham v. Cunningham, 719 S.W.2d 224, 227 (Tex.
App.--Dallas 1986, writ dism'd). To allow a parent to deliberately secrete a child to Texas for the
purpose of obtaining a child custody determination in the state would make a mockery of the statute. 
Siler v. Storey, 677 S.W.2d 504, 507 (Tex. 1984); Carpenter, 835 S.W.2d at 762; Cunningham, 719
S.W.2d at 228. Furthermore, a primary purpose of the UCCJEA is to avoid the relitigation of child
custody issues. See In re K.L.V., 109 S.W.3d 61, 66 (Tex. App.--Fort Worth 2003, pet. denied); 
In re Brilliant, 86 S.W.3d 680, 684 (Tex. App.--El Paso 2002, no pet.); McCoy, 52 S.W.3d at 302.

 Farnsworth took the child from Canada to Texas for the purpose of obtaining another
forum in which to litigate the custody issues he had already pursued in Canada. Had Farnsworth
returned the child to Lewin in New Jersey on September 1, 2003, or even returned the child to her
on November 26 as ordered by the Canadian court, the status quo would have placed him in Canada
and Lewin in New Jersey. Farnsworth and the child's presence in Texas--the basis for the trial
court's exercise of jurisdiction--was wholly due to the abduction. (12) Even if there were an
independent basis for the trial court's jurisdiction over Farnsworth's modification suit under Chapter
152 of the Texas Family Code, the trial court was required to decline its jurisdiction based on
Farnsworth's wrongful retention and later abduction of the child in search of a more favorable forum. 
See Tex. Fam. Code Ann. § 152.208(a); S.L.P., 123 S.W.3d at 689.

 The Milam County district court did not have subject-matter jurisdiction over
Farnsworth's motion to modify child custody because it lost exclusive continuing jurisdiction and
did not regain initial jurisdiction under the provisions of chapter 152 of the Texas Family Code. See
Tex. Fam. Code Ann. §§ 152.201, .202. Because the trial court lacked subject-matter jurisdiction,
the temporary orders issued by the trial court are void. See Barnes, 127 S.W.3d at 847; In re Oates,
104 S.W.3d 571, 575 (Tex. App.--El Paso 2003, no pet.).


CONCLUSION


 Having found that the trial court lacked subject-matter jurisdiction to enter temporary
orders and that it abused its discretion in failing to enforce the Hague Convention order, we
conditionally grant the writ of mandamus. The trial court made an admirable attempt to navigate the
complexities of jurisdiction presented by the circumstances of this custody dispute. We write to give
guidance to trial courts who will more often be faced with such unfamiliar problems as the interplay
between a Hague Convention order and the Texas Family Code, including the UCCJEA. The writ
will issue only in the event that the trial court does not vacate its temporary orders, dismiss
Farnsworth's motion to modify child custody and enforce the Hague Convention order, which is all
the Milam County district court now has jurisdiction to do. 



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Filed: May 27, 2004

1. See Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25,
1980, 19 I.L.M. 1501 [hereinafter Hague Convention].
2. See UCCJEA § 202, 9 U.L.A. 81 (Supp. 2004).
3. See Tex. Fam. Code Ann. § 152.202 (West 2002).
4. The order specifically divided possession of the child as such:


From October 14, 2002 until November 2, 2002 at 5:00 p.m., Brenda Lee Lewin
shall have possession of the child . . . .


From November 2, 2002 . . . until December 14, 2002 . . . , Robert George
Farnsworth shall have possession of the child . . . .


From December 14, 2002 . . . until January 4, 2003 . . . , Brenda Lee Lewin shall
have possession of the child . . . .


From January 4, 2003 . . . until April 5, 2003 . . . , Robert George Farnsworth
shall have possession of the child . . . .


From April 5, 2003 . . . until July 5, 2003 . . . , Brenda Lee Lewin shall have
possession of the child . . . .


From July 5, 2003 . . . until the commencement of the periods of possession that
commence on September 1, 2003 . . . Robert George Farnsworth shall have
possession of the child . . . .
5. The clerk's record indicates that the letter was received on August 21, 2003.
6. The Hague Convention on the Civil Aspects of International Child Abduction was
established in 1980 to provide a remedy for international child abductions. Saavedra v. Schmidt, 96
S.W.3d 533, 542 (Tex. App.--Austin 2002, no pet.) (citing preamble to Hague Convention). 
Congress enacted the Hague Convention through the International Child Abduction and Remedies
Act ("ICARA"). 42 U.S.C.A. §§ 11601-11610 (West 1995). The ICARA grants concurrent
jurisdiction to state and federal courts to determine the merits of an abduction claim under the
Convention, but not the merits of the underlying custody battle. Id. § 11603(a); In re Vernor, 94
S.W.3d 201, 207 (Tex. App.--Austin 2002, no pet.); England v. England, 234 F.3d 268, 271 (5th
Cir. 2002).
7. A plea to the jurisdiction has also been recognized as an acceptable challenge to a trial
court's assertion of jurisdiction in a child custody determination. See In re S.L.P., 123 S.W.3d 685,
687-88 (Tex. App.--Fort Worth 2003, no pet.); In re Brilliant, 86 S.W.3d 680, 684-85 (Tex.
App.--El Paso 2002, no pet.).
8. Article 3 of the Hague Convention states that the removal or retention of a child is
wrongful where:


(a) it is in breach of rights of custody attributed to a person, an institution or any
other body, either jointly or alone, under the law of the State in which the
child was habitually resident immediately before the removal or retention;
and


(b) at the time of removal or retention those rights were actually exercised,
either jointly or alone, or would have been exercised but for the removal or
retention . . . .


Hague Convention, art. 3.
9. Contrary to Farnsworth's arguments advanced in his response, the residency findings in
the Hague Convention order are not merely dicta. Although the technical domicile of the parties is
not relevant to a determination under the Hague Convention, the court must determine the "habitual
residence" of a child so that the court may correctly direct the return of the child. Hague Convention,
arts. 11-16. The court here also had to determine the New Jersey residence of both Lewin and the
child in the course of enforcing the original SAPCR order.
10. When a child's home state is outside of Texas, Texas may obtain initial jurisdiction only
if the court with home state jurisdiction has "declined to exercise jurisdiction on the ground that a
court of [the State of Texas] is the more appropriate forum to determine the custody of the child
under Section 152.207 [Inconvenient Forum] or 152.208 [Jurisdiction Declined by Reason of
Conduct]." Tex. Fam. Code Ann. § 152.201(a)(3) (West 2002). Although the New Jersey court
denied Lewin's custody suit, it wrongly decided that Texas appeared to be the child's home state,
not that Texas was an inconvenient forum or that there had been unjustifiable conduct. 
11. The only exceptions to this provision are when the parents have acquiesced to the court's
exercise of jurisdiction or when a court of another state otherwise having jurisdiction finds Texas
a more appropriate forum under section 152.207 of the code. See Tex. Fam. Code Ann. §152.208
(West 2002). Neither exception applies to this case.
12. Had Farnsworth returned the child on September 1, 2003 or on November 26, 2003 and
then filed his modification suit in Milam County, the court would have determined that it no longer
had exclusive continuing jurisdiction because all of the parties had left the state. See Tex. Fam.
Code Ann. § 152.202(a) (West 2002).